**CALABRIAN CHEMICALS CORPORATION,**
**Appellant,**

v.

**BAILEY–BUCHANAN MASONRY, INC., Appellee.**

No. 09–00–373 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 9, 2001.

Decided May 10, 2001.

---

Michael J. Truncale, Hollis Horton, Martha Campbell, Orgain, Bell & Tucker, LLP, Beaumont, for appellant.

Bill Richey, Griffin & Matthews, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

GAULTNEY, Justice.

Appellee Bailey–Buchanan Masonry, Inc. ("Bailey") sued appellant Calabrian Chemicals Corporation ("Calabrian") to recover damages under a building contract and to foreclose on a mechanic's lien. The jury found that Calabrian did not comply with its agreement with Bailey, but nonetheless returned a verdict of zero damages. After both Bailey and Calabrian filed post-verdict motions, the trial court granted Bailey's motion to disregard the jury findings of $0 for both damages and attorney's

fees and, in effect, denied Calabrian's motion to enter judgment on the jury verdict. The trial court then made its own affirmative findings on damages and attorney's fees and entered judgment in favor of Bailey. On appeal we are asked by Calabrian to reinstate the jury findings in its favor or, in the alternative, to grant a new trial. We reverse the trial court's judgment and order a new trial.

## THE DISPUTE

Bailey worked on the construction of a concrete block building in 1998–99 for Calabrian. The terms of the agreement between the parties are the subject of this dispute. Bailey claims it agreed to do the work on a time and material basis. Calabrian agrees with that characterization of the agreement, but also maintains there was an additional term agreed to by the parties—namely a $68,000 cap. The record reveals that Bailey's invoices exceeded the $68,000 cap. The record also reveals that Bailey cashed a Calabrian check on which was typed the notation "final payment." With the $68,000 having been paid to Bailey and no additional payments forthcoming, Bailey sued Calabrian for breach of contract, fraud, and DTPA violations, and sought foreclosure of a mechanic's lien.

## THE BACKGROUND FACTS

The dispute is clear-cut, as presented through the testimony of the two people who negotiated the agreement: Robert Bailey, the president of Bailey–Buchanan Masonry, Inc., swore the agreement he negotiated with Kate Block was time and material only—with no cap; Kate Block, Calabrian's purchasing agent, swore the agreement was time and material—with a $68,000 cap. Both Bailey and Block agreed they had at least four conversations in 1998 about the project—one in August

1998, and the others on September 30, October 23, and October 28, 1998.

*The August Conversation:* During the August conversation, Block asked Bailey to begin work on the building and to construct the first three rows of brick. After the three rows of brick were laid, and while other work on the project was being done by other contractors, Bailey left the job. Both Block and Bailey agreed that this phase of the work was on a time and material basis only. That work, from August 18—26, 1998, was completed and Bailey was paid for the work.

*The September 30 Conversation:* On September 30, 1998, Kate Block again called Bailey. According to Robert Bailey, Kate Block asked him to fax her his original bid ($112,700) on the project; the bid had been rejected and she had lost her copy. Bailey claimed he and Kate Block did not talk about any percentage breakdown on the job or any change in the agreement concerning payment.

Kate Block's account of the September 30 conversation is different. She testified she called Bailey and asked him for "a quote, another bid ... [a] not to exceed [bid], to do the second part of the building." According to Kate Block, Robert Bailey told her during their September 30 conversation to subtract the $9,285.64 that Calabrian already had paid him for the first completed phase of the project from the original bid, and then use a 65/35 split to obtain the remaining bid. This division would permit Bailey to receive 65 percent for his labor; Calabrian would be responsible for the material, about 35 percent.

*The October 23 Conversation:* As with the accounts of their September 30 conversation, the parties' descriptions of the October 23 conversation differ markedly. According to Bailey, Kate Block called and told him to return to work on the project. He indicated she never mentioned any

change in the way he would be paid. When Block brought up a 65/35 breakdown, he told her it would take him a few days to figure it out. Bailey indicated Block did not actually want a specific breakdown on the job. Bailey testified there was no change of terms; he understood they were still working under the same purchase order number. He further indicated there was no discussion about a "cost not to exceed" basis for the job. In response to Block's call, Bailey resumed work on the project.

According to Kate Block, Benny Deters (Calabrian's plant manager) instructed her to call Bailey on October 23 and firm up the deal. During the October 23 conversation, she went over the terms with Bailey again: (a) the 65/35 split (that she says Bailey suggested in their September 30 conversation) and (b) the time and material basis of the job with a cap of $68,000. She testified she wrote up that same day a purchase order (number 10356) reflecting their conversation. On its face, the purchase order states as follows:

> "This project is done on time basis, but not to exceed $68,000.00. Calabrian to furnish materials, Bailey to furnish rental equipment & concrete. . . ."

Block stated she gave Bailey the purchase order number by phone on October 23. According to both Bailey and Block, Bailey resumed work on Monday, October 26, 1998.

***The October 28 Conversation:*** Both Kate Block and Robert Bailey testified that Block faxed the purchase order to Bailey on Wednesday, October 28. Upon receipt of the purchase order, Bailey immediately telephoned Block because he was surprised at the "not to exceed number" language on the purchase order. He claims she told him that the purchase order was an "in-house need on [Calabrian's] part," and that they needed to put a limit on the purchase order amount. According to Bailey, Block also told him that the actual amount of the project would be different, and that Calabrian would later make out a second and then third purchase order. He indicated this procedure had been followed on an earlier job. Bailey emphasized that he did not agree to provide labor other than on a time and material basis, and that there was never any suggestion that the internal cap of $68,000 would be binding upon him. Nevertheless, after their conversation ended Bailey instructed his secretary, Belinda Faulk, to make note of when the project reached the $51,000 level so that he could inform Calabrian he was reaching the limit on the purchase order.

Like Bailey, Kate Block testified she faxed purchase order 10356 to Bailey on Wednesday, October 28, 1998. She agreed that Bailey telephoned her that same day and told her he was not going to guarantee the cost of $68,000 on the job. However, Block testified Bailey did not tell her there was no way he would do the work for $68,000. She indicated that if Bailey had told her there was no way he was going to do the work for $68,000, she would have gone to Deters about it and Bailey probably would have left the job.

Kate Block testified that Valerie Randall, a Calabrian employee in accounts payable, informed her in early January 1999 that Bailey's invoices exceeded the $68,000 cap. According to Block, she called Bailey on January 7, 1999, and asked him to send her a letter explaining the cost overruns. Bailey faxed her a letter the next day.

***The Calabrian Check:*** In April 1999, Bailey received a check dated March 3, 1999, from Calabrian. The following language was typed on the check paperwork:

"FINAL PAYMENT ON OUR PUR-CHASE ORDER 10356 which was not to exceed 68,000."

Bailey testified that although he cashed the check, he did not accept the check as the last payment on the job. He also indicated that shortly after he received the check he called Block to find out when the next purchase order would be issued. Block then scheduled a meeting between the parties. Present at this final meeting were Block, Bailey, Deters, and Larry Warner, Calabrian's project manager. The meeting did not resolve the dispute.

## THE TRIAL

A jury trial ensued. The jury returned findings that Calabrian had agreed to pay Bailey on a time and material basis and that Calabrian failed to comply with the agreement. However, when given an instruction on the measure of damages, the jury found $0 damages. After receipt of the verdict, Bailey filed a motion to disregard the zero damages finding. Calabrian filed a motion for judgment on the verdict. Calabrian asked the trial court to reconcile what it called any "apparent conflict" in the jury's answers and enter a judgment in its favor. Nevertheless, the trial court granted Bailey's motion and entered an order disregarding the jury findings of zero damages and zero attorney's fees. After disregarding the jury findings, the trial judge then made affirmative findings of $50,548.90 for Bailey's damages and $23,818.50 for Bailey's attorney's fees. The trial court also assessed additional attorney's fees against Calabrian in the event of an appeal. The final judgment sets forth those awards, as well as an order of foreclosure on Bailey's mechanic's lien.

After the final judgment was signed, Calabrian filed a motion for judgment notwithstanding the jury's liability findings and a motion for new trial. Calabrian's

motions were overruled by operation of law. The motion for new trial was overruled by operation of law, and the judgment notwithstanding the verdict motion was impliedly overruled by the trial court's granting of Baily's motion to disregard the jury findings.

## THE ISSUES ON APPEAL

Calabrian raises eight points on appeal. Issues one through four concern the doctrine of accord and satisfaction. Issues five through eight relate to the jury's finding of zero damages. We group the issues for analysis.

## ACCORD AND SATISFACTION

■ TEX. BUS. & COMM.CODE ANN. § 3.311 (Vernon Supp.2001) provides that a claim is discharged where the claim is subject to a bona fide dispute, a person in good faith tenders an instrument as full satisfaction of the claim and the other party then obtains payment on the instrument, i.e. cashes the check. Here, Calabrian properly requested a jury issue on accord and satisfaction, but over Calabrian's objection the trial court submitted the issue conditioned on a prior question asking whether a certain purchase order constituted the complete agreement of the parties. The jury found that the purchase order did not constitute the complete agreement of the parties, so they did not answer the accord and satisfaction issue. Calabrian claims that it was entitled to an unconditional submission of its defensive issue and would like a new trial in the event this Court does not hold that its defense was established as a matter of law. If we find the defense was established as a matter of law, Calabrian asks that we render judgment that Baily recover nothing.

■ A litigant is entitled to have controlling fact issues which are supported by

the pleadings and the evidence submitted to the jury. *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995). When a theory of recovery or defense is raised by the pleadings and the evidence and the appropriate issue is timely and properly requested as part of the trial court's charge, it is harmful error for the trial court to refuse to submit the issue to the jury. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992). A judgment obtained under those circumstances cannot stand. The issue here is whether there is evidence to support submission of the defense of accord and satisfaction.

The parties had a dispute and met to discuss the matter of cost overrun. Bailey received a check bearing the words "final payment" and referencing an invoice number. The language was brought to Bailey's attention by his secretary and concern was raised. Bailey nevertheless deposited the check. This evidence was sufficient to require a proper unconditioned submission of the accord and satisfaction defense.

Bailey argues that the failure to submit the defense unconditionally makes no difference since the jury found that the invoice referenced on the check was not the complete agreement of the parties. This argument ignores the fact that this finding could be consistent with a jury finding of accord and satisfaction: that is, that the check was the final payment on the only remaining disputed item, which payment was accepted and deposited. It is true the invoice referenced on the final check may not have been the complete "agreement" between the parties; the jury so found. It is even possible the referenced invoice may not have been the complete **dispute** between the parties; we do not know since the jury was not asked the question. However, the fact that the invoice referenced on the check was not the complete

agreement of the parties does not determine whether the check was tendered in resolution of the only remaining dispute between the parties.

There is some evidence that the check was recognized as a final payment in resolution of the only dispute and was deposited. Bailey's secretary not only called the "final payment" language to Bailey's attention, she circled it. She testified:

I knew that at that point we may be gonna have a hard time getting the rest of our money that Calabrian owed. That's why it made me so upset.

The trial court erred in failing to submit the issue to the jury unconditioned. The jury's answer that the invoice was not the complete agreement of the parties did not address the issue of whether the acceptance of the check constituted an accord and satisfaction of the final remaining dispute between the parties.

However, we decline Calabrian's request to find that the defense was established as a matter of law. The issues of the nature of the dispute and the other elements of the defense are matters on which the jury heard conflicting evidence. We cannot pick and choose evidence or be the judges of the credibility of fact witnesses we have not seen or heard. We overrule issues one, three, and four only to the extent of the relief requested—rendition. We grant Calabrian's issue two on appeal but decline to render a judgment in its favor. Instead we believe the appropriate remedy is to reverse and remand for a new trial under these circumstances. However, because we refuse to render a take-nothing judgment on this issue, we must consider Calabrian's request that we render judgment because of the zero damage finding.

## Zero Damages

Calabrian asks that we render judgment in its favor based on the jury's finding of

zero damages, or alternatively reverse and remand the case for a new trial. Although we have already determined that a new trial is the appropriate remedy for the error in failing to submit the accord and satisfaction defense unconditionally, we consider Calabrian's request for rendition on the zero damages issue.

In answer to Question 1, the jury found that Calabrian agreed to pay Bailey on a time and material basis. In answer to Question 3, which was conditioned on an affirmative answer to Question 1, the jury found that Calabrian failed to comply with the agreement. The damages issue was Question 7. It was conditioned on an affirmative answer to Question 3. In the damages issue, the jury was asked to determine what sum of money would fairly and reasonably compensate Bailey for Calabrian's conduct based solely on the following, and only the following, element of damages:

> The difference between the amount Calabrian Chemicals Corporation agreed to pay Bailey–Buchanan Masonry, Inc., and the amount paid by Calabrian Chemicals Corporation to Bailey Buchanan Masonry, Inc.

The jury answered this question with a zero.

The jury found in response to Questions one and three that Calabrian failed to comply with its agreement to pay Bailey on a time and material basis; yet in answer to Question 7 they found that there was no difference between what Calabrian agreed to pay Bailey and the amount Calabrian actually paid Bailey. If there is no difference between what Calabrian agreed to pay under the agreement and what Calabrian actually paid, why did the jury find in answer to Question 3 that Calabrian had failed to comply with the agreement? The jury's answer to Question 7 is in apparent conflict with the jury's answer to Question 3.

■ Calabrian properly argued to the trial court and now to this Court that where there is an apparent conflict in the jury answers, a court is under a duty to reconcile them if possible. *Huber v. Ryan*, 627 S.W.2d 145, 145–46 (Tex.1981). Courts start with the presumption that jurors do not intend to make conflicting findings. *Trans American Van Service, Inc. v. Shirzad*, 596 S.W.2d 587, 593 (Tex. Civ.App.—Houston [1st Dist.] 1980, no writ). If the findings are in conflict and recognized to be so before the verdict is accepted, the trial court is required in open court to instruct the jury in writing of the nature of the conflict, provide the jury additional instructions as are proper, and retire the jury for further deliberations. Tex.R. Civ. P. 295. If the verdict is accepted before the findings are determined to be in apparent conflict, the trial court should attempt to reconcile the findings and enter judgment on the verdict. However, if material findings are in fatal conflict, such as when they would not support a verdict for either party, the trial court cannot alter the verdict; the findings constitute no verdict. Fatal conflicts require a new trial. *See, Bell Cab Co. v. Vasquez*, 434 S.W.2d 714, 719 (Tex.Civ. App.—San Antonio 1968, writ ref'd n.r.e.).

■ Here, Calabrian claims the findings should have been reconciled by the trial court and that the trial court erred in disregarding the jury's zero damage finding and entering his own finding on damages. Calabrian urges that we set aside the trial court's damage award, reconcile the jury's findings and render a take-nothing judgment based on the zero damages finding.

We first consider whether the findings can be reconciled. Calabrian presents four arguments explaining its view of how

they can be reconciled. First, Calabrian asserts that the jury's zero damage award may have been based on their belief in Calabrian's position that there was a cap on the amount Calabrian was required to pay under the contract and that Calabrian paid all it agreed to pay. Calabrian argues this does not conflict with the answer to Question 3 because the jury simply may have found that Calabrian failed to comply with some aspect of the agreement other than the payment terms, since there is evidence, for example, that Calabrian never paid the invoices in a timely manner. However, this ignores the jury's finding to Question 1, which the answer to Question 3 references since it was based on an affirmative answer to Question 1. The jury's answer to Question 1 specifically finds that Calabrian agreed "to pay" Bailey "on a time and material basis"—the agreement to pay was the agreement with which the jury found Calabrian failed to comply, not some other requirement such as timeliness.

Next Calabrian makes two related arguments: first, that the jury may have found Calabrian already paid what was fair and reasonable and Bailey was entitled to no more; and secondly, that the jury may have found that Bailey simply failed to meet its burden of proof. These arguments fail because of the specific nature, and the limiting nature, of the damage instructions. The answer was conditioned on an affirmative answer to Question 3. The jury was asked specifically to find the difference between the amount Calabrian agreed to pay (under the agreement found in response to Question 1) and the amount it did pay. If there is no difference between those two numbers, then the jury's answer to Question 3 is wrong; Calabrian did not fail to comply with its agreement to pay Bailey.

Finally, Calabrian argues that the jury may have found that Bailey's cashing the check discharged the debt—a sort of implicit finding of accord and satisfaction. The problem with this interpretation is it requires us to read instructions into the damage issue which are not there. The jury was not asked whether the failure to pay, which they found in answer to Question 3, had been by agreement discharged by the acceptance of the "final payment" check by Bailey. They were asked to find the difference between (1) what Calabrian **agreed to pay yet failed to pay** and (2) what it did pay.

We find the jury answers to Questions 1 and 3, when considered together, are in fatal conflict with the jury's answer to Question 7. The trial court had no authority to ignore one material finding over the other. The findings are of equal importance. The trial court should have granted a new trial.

Since plaintiff has not successfully obtained a verdict or judgment in its favor, we reverse the award of attorney's fees and remand that issue for a new trial as well. *See, Green Int'l, Inc. v. Solis*, 951 S.W.2d 384 (Tex.1997). We likewise set aside the order of foreclosure on the mechanic's lien.

We grant appellant's request for relief in issues two, five, six, seven, and eight to the extent they request a reversal of the trial court's judgment and a remand for a new trial. We overrule Calabrian's request for rendition of a take-nothing judgment.

REVERSED AND REMANDED.