In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-00-571 CV


____________________



JAMES M. MADDOX AND KELLI L. MADDOX, Appellants



V.



SUMMIT MORTGAGE CORPORATION AND NATIONSBANC


 MORTGAGE CORPORATION, NOW KNOWN AS 


BANK OF AMERICA MORTGAGE CORPORATION, Appellees






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 99-01-00433-CV






OPINION


 James M. Maddox and Kelli L. Maddox sued Summit Mortgage Corporation and
NationsBanc Mortgage Corporation, now known as Bank of America Mortgage
Corporation, seeking discharge of their mortgage debt because of the fraudulent alteration
of their promissory note. The trial court disregarded the answer to one of the two
questions submitted to the jury, and entered a take nothing judgment. 

 The questions submitted to the jury read:

QUESTION NO. 1 


 Did Nationsbanc Mortgage Corporation make a material and
fraudulent alteration to the promissory note in question?

 You are instructed when answering this question that the acts of a
party's authorized agent or employee, or of its confederates, are attributable
to him.

 "Material" means: any alteration of an instrument which changes the
contract of any party thereto in any respect.

 You are instructed that changes favorable to the obligor are unlikely
to be made with any fraudulent intent; but if such an intent is found the
alteration may operate as a discharge.

 You are instructed that an alteration of a promissory note is fraudulent
only if the alteration was made by a person with dishonest and deceitful
purpose to acquire more than such person was entitled to under the note as
signed by the maker and the maker suffered some loss as a result of the
alteration.

 Answer "Yes" or "No"

 Answer Yes 


 If you answered "Yes" to Jury Question Number 1 then answer
Question No. 2. Otherwise do not answer Question No. 2.









Question No. 2 



 Do you find that Bank of America Mortgage Corporation[ (1)] bought the
Adjustable Rate Note from Summit Mortgage Company in good faith and
without notice of any defense against the Adjustable Rate Note?

 "Good Faith" means honesty in fact in the transaction concerned. A person
can be said to have exercised good faith when it has observed the reasonable
commercial standards of fair dealing in his trade.


 A person has "notice of a defense" to the Adjustable Rate Note if the
instrument is so incomplete, bears such visible evidence of forgery or
alteration, or is otherwise so irregular as to call into question its validity,
terms or ownership.


 A person has "notice" of a fact when



 he has actual knowledge of it;
 he has received a notice or notification of it; or
 from all of the facts and circumstances known to him at the
time in question he has reason to know that it exists


 

 Answer "Yes" or "No:"


 Answer: Yes 

 

 The Maddoxes raise nine issues in their appeal. Their brief groups the argument
on these first four issues:

 ISSUE NO. 1: The trial court erred in ignoring the jury's answer to jury
question no. 1 and refusing to enter judgment discharging Plaintiffs' debt.


 ISSUE NO. 2: The trial court erred in granting the motion to disregard the
jury's finding to jury question no. 1. 


 ISSUE NO. 3: The trial court erred in rendering its final judgment because
the judgment does not conform to the verdict reached by the jury in jury
question no. 1 and is therefore contrary to the jury's findings. 


 ISSUE NO. 4: The trial court erred in rendering final judgment based solely
upon its interpretation of the jury's answer to jury question no. 2 because
there was no evidence to support the trial court's interpretation of the jury's
answer and the trial court's interpretation created an irreconcilable conflict
between the jury's answers.


 On November 15, 1995, the Maddoxes executed an adjustable rate note, payable
to Summit Mortgage Corporation, that provided for a January 1 annual interest rate change
date. The note was secured by an FHA deed of trust, which was filed in the county real
property records on November 22, 1995. An assignment of the note from Summit
Mortgage Corporation to Boatmen's National Mortgage Corporation, dated November 15,
1995, also was filed in the real estate records on November 22, 1995. Summit endorsed
the note to Boatmen's without recourse. On December 1, 1995, Boatmen's notified the
Maddoxes that the monthly mortgage payments would be paid to it. 

 A letter from Boatmen's to Summit, dated December 6, 1995, stated:

 After reviewing the above referenced file for purchase, we are holding
funds. We will forward funds upon receipt of documents clearing the
conditions listed below. We must have these conditions in our office no later
than 12-12-95. If this date is not met, you will be subject to current market
price. Your prompt attention in resolving this matter will be greatly
appreciated. The items(s) needed are as follows:

 1 X Original note is enclosed/first change date be corrected to be
4-1-97 and initialed by borrowers.

 2 Deed of trust - ARM rider must also be corrected to show
correct change date of 4-1-97, initialed by borrowers and re-recorded.

 3 If assignment has been recorded, it will have to be re-recorded to reflect re-recording of deed of trust.

 4 Just for your information - the escrow amount for taxes on line
1006 is shown on wrong line; should be on tax line instead of
flood insurance line.


 Should you have any questions, please contact me at 8516 . Thank
you for your prompt attention in this matter.


The handwritten words "final docs" were written on the right margin. (2) 

Boatmen's funded the loan to Summit on December 13, 1995. 

 The mortgage rate change date was altered to "4/1/97" on the face of the
promissory note and the adjustable rate rider. The alterations were initialed "JM" and
"KLM" but the initials are forgeries. Both James Maddox and Kelli Maddox testified that
they not only did not authorize the alteration to the note, they had no knowledge that the
change had been made until after Boatmen's notified them on March 6, 1997, that their
interest rate had been increased by 1%. On December 18, 1995, the FHA deed of trust
with adjustable rate rider was re-recorded to reflect the altered change date. The
assignment from Summit to Boatmen's was not cancelled, nor was it re-recorded. 

 NationsBanc Mortgage Corporation merged with Boatmen's in 1997. NationsBanc
Mortgage Corporation was a wholly owned subsidiary of NationsBank. In turn, Bank of
America merged with NationsBank in 1999. At the time of trial, Bank of America was the
holder of the note as successor in interest to Boatmen's. 

 Kimberly Lindsey, Summit's operations manager, testified that, although it was
addressed to her, she first saw the December 1 Boatmen's letter after this litigation
commenced. Summit's file had been destroyed in late 1997 or early 1998, so she could
not compare the letter to any documents in Summit's file. Lindsey did not recognize the
handwriting on the letter. She did not make the alteration to the Maddox note and she did
not know if the note was altered at Summit or at Boatmen's. 

 Stewart Thomas Porter, a Summit vice-president, testified that Summit is a loan
originator that sells all of its loans to other mortgage companies. Porter was not involved
with the Maddox loan until after litigation commenced. He did not know who made the
changes on the Maddox papers. According to Porter, the change date is only a clerical
date in order to meet the parameters of a pool on the secondary market and is not
negotiated with the borrower. He felt that the repricing mentioned in the Boatmen's letter
was a mere clerical change and not a matter of concern to Summit. If Boatmen's decided
not to buy a note it had examined, they would return it to the warehouse bank and the
endorsement would be cancelled and the assignment would be voided. 

 Clyde Ben Cowen, the corporate representative for Bank of America, testified that
Boatmen's, NationsBanc, and Bank of America were all the same entity. Cowen had no
documentation that the change date had been altered prior to the date it sent the money for
the Maddox note. He does not have a stamp like that used with the forged initials. 

 Question 1 applied Section 3.407 of the Texas Business and Commerce Code:

 (a) Any alteration of an instrument is material which changes the contract
of any party thereto in any respect, including any such change in


 . . . .


 (3) the writing as signed, by adding to it or by removing any part of
it.

 (b) As against any person other than a subsequent holder in due course

 (1) alteration by the holder which is both fraudulent and material
discharges any party whose contract is thereby changed unless that party
assents or is precluded from asserting the defense;

 (2) no other alteration discharges any party and the instrument may
be enforced according to its original tenor, . . .


Act of May 24, 1967, 60th Leg., R.S., ch. 785, §1, 1967 Tex. Gen. Laws 2424. (3) 

 We may uphold a trial court's judgment notwithstanding the verdict only if no
evidence supports the jury's finding. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226,
227 (Tex. 1990). Our review is limited to the evidence tending to support the jury's
verdict; we must disregard all evidence to the contrary. Id. If more than a scintilla of
evidence supports the jury finding, it must be upheld. Id. at 228. A jury finding is not
based on legally sufficient evidence if: (1) there is a complete absence of evidence of a
vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite
of the vital fact. See Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997). 

 NationsBanc argues that the Maddoxes failed to plead a theory upon which
NationsBanc could be liable for an alteration made by Summit. In the absence of special
exceptions, pleadings are to be liberally construed in favor of the pleader. See Bank One,
Texas, N.A. v. Stewart, 967 S.W.2d 419, 430 (Tex. App.--Houston [14th Dist.] 1998, pet.
denied). Pleadings must give fair notice of the claim asserted to provide the opposing
party with enough information to enable him to prepare a defense. Id. A petition is
sufficient if a cause of action may be reasonably inferred from what is specifically stated. 
Id. The Maddoxes' petition alleges, "Defendant, Summit Mortgage Corporation, is a
mortgage corporation engaged in the business of marketing mortgage loans to consumers
for the purposes of selling mortgage loans in the secondary market. Plaintiffs believe that
the Defendants, in order to confer greater rights on Defendants as holders of Plaintiff's
loan, fraudulently and materially altered the Note and related documents. . ." This
pleading is sufficient to place the defendants on notice that the plaintiffs were seeking to
hold them liable under a theory of joint liability because it alleges that NationsBanc and
Summit acted together to alter the documents. 

 Next, NationsBanc argues that the evidence conclusively established that it did not
alter the note. While the Maddoxes did not prove the identity of the individual who forged
their initials, they did prove that the forgeries occurred after the note had been assigned
to Boatmen's, and Boatmen's had received actual, physical possession of the note. 
Although there was evidence that the assignment could have been cancelled, it was not. 
Boatmen's could have required the execution and recording of a new assignment, but it did
not. Boatmen's paid Summit for the note before the forged documents were re-recorded. 
NationsBanc held the note at the time of its unauthorized alteration.

 NationsBanc argues that the alteration of the documents delayed the raising of the
interest rate by three months, saving the Maddoxes money. This argument presupposes
that the interest rate would have been increased effective January 1, 1997. None of the
evidence in the record, however, indicates that Boatmen's took any action to increase the
interest rate until it notified the Maddoxes of the increase on March 6. By that time, it was
too late to change the interest rate payable on the unpaid balance of the note for 1997. The
Maddoxes paid $496.89 in additional interest in 1997. 

 NationsBanc also argues that there was no evidence that it had a dishonest or
deceitful purpose for altering the loan documents. Both Summit and NationsBanc were
motivated purely by a desire to sell the loan to GNMA. Neither Summit nor NationsBanc
provided any explanation for the total failure to communicate with the Maddoxes. As the
person who altered the change date did not come forward, there is no evidence that the
change was made with the mistaken belief that it was authorized by the makers. Although
Cowen testified that the paperwork appeared to be regular on its face, the December 6
letter demonstrates that someone at Boatmen's was aware that the Maddox paperwork
provided for a January 1 rather than an April 1 change date, and that date was changed
without any of the documents being re-executed and re-acknowledged before a notary. 
Although a person who had never seen the documents before December 18 might have
thought the change was initialed before the documents were executed, the person handling
the purchase for Boatmen's would have known that was not the case.

 There is evidence in the record that supports the jury's finding on the first jury
question. Therefore, the trial court erred in disregarding the question. In answer to the
second question, the jury found that Bank of America purchased the note as a holder in due
course. Bank of America and NationsBanc are the same entity. "In order for conflicting
findings to destroy each other, one finding must be such as would warrant a judgment for
one of the parties, and the other finding would warrant a judgment for the other party." 
Isern v. Watson, 942 S.W.2d 186, 191 (Tex. App.--Beaumont 1997, pet. denied). A
jury's findings fatally conflict only if the findings concern the same material fact and there
is no reasonable basis upon which they can be reconciled. See Bender v. Southern Pac.
Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980). The Maddoxes argue that the answers
can be reconciled if NationsBanc purchased unaltered notes, then altered them. We
disagree. NationsBanc cannot be a holder in due course if it participated in the fraudulent
alteration of the documents. See Act of May 24, 1967, 60th Leg., R.S., ch. 785, §1, 1967
Tex. Gen. Laws 2419. (4) 

 The Maddoxes argue there is no evidence to support the jury's finding to Question
No. 2. Ben Cowen testified that, from Boatmen's computer records, it appeared that the
paperwork was mailed to Summit on December 6 and received back at Boatmen's on
December 13. He testified that Boatmen's would not have purchased the loan if the
documents had not been changed. According to Cowen, the paperwork did not look
unusual. Thus, there is some evidence that Boatmen's purchased the note without
knowledge of the fraudulent alteration. 

 Although there is more than a scintilla of evidence to support the findings on the
two questions submitted to the jury, those answers are in fatal conflict with each other. 
"Fatal conflicts require a new trial." Calabrian Chemicals Corp. v. Bailey-Buchanan
Masonry, Inc., 44 S.W.3d 276, 282 (Tex. App.--Beaumont 2001, pet. denied). The
judgment of the trial court is reversed and the cause is remanded for a new trial. We
decline to address the remaining issues raised in the briefs. 

 REVERSED AND REMANDED.


 PER CURIAM



Submitted on December 13, 2001

Opinion Delivered March 7, 2002

Do Not Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. Bank of America Mortgage Corporation is the successor in interest to NationsBanc
Mortgage Corporation, as shall be explained elsewhere in this opinion.
2. The copy of the letter, which NationsBanc produced at trial, had handmade
alterations of uncertain age and authorship. The typeset portion of the letter appears below:

 After reviewing the above referenced file for purchase, we are holding
funds. We will forward funds upon receipt of documents clearing the
conditions listed below. We must have these conditions in our office no later
than 12-12-95. If this date is not met, you will be subject to current market
price. Your prompt attention in resolving this matter will be greatly
appreciated. The items(s) needed are as follows:

 1 X Original note is enclosed/first change date be
corrected to be 4-1-97 and initialed by
borrowers.

 2 X Deed of trust - ARM rider must also be
corrected to show correct change date of 4-1-97,
initialed by borrowers and re-recorded.

 3 X If assignment has been recorded, it will have
to be re-recorded to reflect re-recording of deed
of trust.

 4 Just for your information - the escrow amount
for taxes on line 1006 is shown on wrong line;
should be on tax line instead of flood insurance
line.

 Should you have any questions, please contact me at 8516 . 
Thank you for your prompt attention in this matter.
3. For current law, see Tex. Bus. & Com. Code Ann. § 3.407 (Vernon Supp. 2002). 

4. For current law, see Tex. Bus. & Com. Code Ann. § 3.302 (Vernon Supp. 2002).