ACCEPTED
05-24-00043-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/22/2025 4:43 PM
RUBEN MORIN
CLERK

No. 05-24-00043-CV

_____

In the Fifth Court of Appeals
Dallas, Texas

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

8/22/2025 4:43:21 PM

Ruben Morin
Clerk

_____

JENNIFER WEEKS
and DAVID CANCHOLA,

Appellants,

vs.

ROBERT W. MANLEY, JR.,

Appellee.

_____

Appeal from Probate Court No. 1, Collin County, Texas
Hon. Nathan White - No. PB1-0748-2020

_____

# Appellant Jennifer Weeks' Motion for Rehearing

_____

Michael D. Peay
Texas Bar No. 00795582
mpeay@foley.com
Rachel K. O'Neil
Texas Bar No. 24068616
rkoneil@foley.com
Stacy R. Obenhaus
Texas Bar No. 15161570
sobenhaus@foley.com
Thomas A. Leonard

Texas Bar No. 24091707
tleonard@foley.com
Foley & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel:   214.999.3000
Fax:  214.999.4667

Counsel for Jennifer R. Weeks

# Table of Contents

Table of Contents ................................................................................ 2

Index of Authorities ............................................................................ 3

Statement of Issues ............................................................................. 4

Argument ............................................................................................ 5

    I.      The Panel Opinion Alters Texas Law Requiring Objective
           Manifestations Of Authority............................................................ 6

    I.      The Opinion Alters Texas Law Requiring That There Be
           Objective Manifestation Of Consent. ............................................. 8

    II.     The Opinion Alters Texas Law By Construing The Verdict
           Beyond The Commonly Understood Meaning Of Words.............. 10

Prayer ................................................................................................ 11

Certificate of Compliance ................................................................. 13

Certificate of Service......................................................................... 13

Appendix A – Memorandum Opinion

Appendix B – Judgment

Appendix C – Charge of the Court

# Index of Authorities

## Cases

*BPX Operating Co. v. Strickhausen*
   629 S.W.3d 189 (Tex. 2021)..................................................................8

*Fox v. Rehab. & Wellness Ctr. of Dallas, LLC*
   No. 05-21-00904-CV, 2023 WL 3814048 (Tex. App.—Dallas June 5,
   2023, no pet.) ....................................................................................7

*Friend v. Acadia Holding Corp.*
   No. 05-16-00286-CV, 2017 WL 1536503 (Tex. App.—Dallas Apr. 27,
   2017, no pet.) ....................................................................................7

*Gaines v. Kelly*
   235 SW 3d 179 (Tex. 2007)...............................................................6

*IRA Res., Inc. v. Griego*
   221 S.W.3d 592 (Tex. 2007) ..............................................................8

*Jarvis v. K&E Re One, LLC*
   390 S.W.3d 631 (Tex. App.—Dallas 2012, no pet.)..................................7

*Memorial Hermann Health Systems v. Gomez*
   649 S.W.3d 415 (Tex. 2022) .......................................................... 10, 11

*Pressler v. Lytle State Bank*
   982 S.W.2d 561 (Tex. App.—San Antonio 1998, no pet.) ........................5

*Reliant Energy Servs., Inc. v. Cotton Valley Compression LLC*
   336 S.W.3d 764 (Tex. 2011)..............................................................8

## Statutes

Tex. Penal Code § 1.07.................................................................................9

Tex. Penal Code § 6.03 ...............................................................................9

## Statement of Issues

The opinion alters Texas law in two regards.

1.      It holds that a finding of subjective "intent" constitutes a finding of "consent" without requiring *objective manifestations* of that consent.

2.      It construes a jury question in a manner contrary to the manner courts must presume the jury understood it—due to the language instructing the jury to give the terms therein "the meaning commonly used" (CR 556).

A correction as to these important areas of Texas law is warranted.

# Argument

The opinion states: "While question number 5 includes a reference to "intent," the question *in essence* addressed the issue of consent." Appendix A at 28-29 (emphasis added). The opinion cites no authority for the concept that a finding of "intent" is *in essence* a finding of "consent." That's new law.

Later, the opinion again states: "The jury's answer to question number 5 was *in essence* a finding Janice and Robert consented to Merrill Lynch completing the form in a manner that would effectuate their agreement that the accounts would inure to the benefit of the survivor of the two." Appendix A at 43 (emphasis added). The opinion cites no authority for the concept that a finding of "intent" is *in essence* a finding of "consent." Again, new law.

In the latter instance the opinion cites *Pressler v. Lytle State Bank*, 982 S.W.2d 561 (Tex. App.—San Antonio 1998, no pet.). *Pressler* merely confirms that the jury charge here could have asked a proper question: in *Pressler* the charge asked the jury whether the mark "was placed on the signature card by Weaver or *with his knowledge and consent*." *Id*. at 564; Appendix A at 32 (noting that the question in *Pressler* was whether "the "X" was placed on the signature card by Weaver or with his knowledge and consent.").

But *Pressler* does not hold—or suggest, or insinuate—that a finding of the parties' intent is a finding of consent under Texas agency law.

5

This Court likely did not intend to alter Texas agency law in this regard.

But by holding that a party's subjective intent is effectively the same as a party's grant of consent or grant of authority to a third person, the opinion alters a fundamental principle of Texas agency law: requiring the principal's *objective* manifestations of consent or authority to the agent to perform an act on behalf of the principal.

This is unfortunate, because the opinion is *correct* about the operative issue herein: "The operative issue became did Janice and Robert *authorize* and *consent* to the markings being added to the agreement." Appendix A at 28-29 (emphasis added). But the jury charge did not ask whether there was a grant of authority or consent. At best, it asked about the spouses' *subjective intent* to grant such authority or consent—a fine but important distinction, because a *grant* of authority or consent requires objective manifestations.

## I.     THE PANEL OPINION IMPLICATES TEXAS AGENCY LAW.

A grant of authority requires *words or conduct by the principal*, not subjective intent. Thus: "An agent's authority to act on behalf of a principal *depends on some communication* by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 SW 3d 179, 182 (Tex. 2007). This Court has cited *Gaines* in many instances on this very point—as in this case on apparent authority:

6

> Apparent authority is created by "*written or spoken words or conduct by the principal* to third parties, not to the agent." Apparent authority is based on estoppel, arising " 'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" Because apparent authority is based on estoppel, *the principal's conduct* must be that which would lead a reasonably prudent person to believe that authority exists. In determining an agent's apparent authority, a fact finder considers only the *conduct by the principal* that would lead a third party to believe the agent had apparent authority and the reasonableness of the third party's assumptions about authority.

*Jarvis v. K&E Re One, LLC*, 390 S.W.3d 631, 640 (Tex. App.—Dallas 2012, no pet.) (emphasis added) (citations omitted). *Jarvis* involved authority to accept loan payments, but the issue of whether a party has granted an agent authority arises in a variety of contexts, such as a special appearance, *Friend v. Acadia Holding Corp.*, No. 05-16-00286-CV, 2017 WL 1536503, at *4 (Tex. App.—Dallas Apr. 27, 2017, no pet.), and arbitration agreements, *Fox v. Rehab. & Wellness Ctr. of Dallas, LLC*, No. 05-21-00904-CV, 2023 WL 3814048, at *6 (Tex. App.—Dallas June 5, 2023, no pet.).

A holding that subjective intent = consent thus has implications for a broad range of cases involving a grant of consent or authority—not just with regard to contract law.

## I. THE OPINION ALTERS TEXAS LAW REQUIRING THAT THERE BE OBJECTIVE MANIFESTATION OF AGENCY.

The opinion thus implicates some established agency principles.

First, Texas law does not presume agency; the party asserting it has the burden to prove it. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007). So one cannot presume agency from a subjective intent to establish it.

Second, an agent's authority to act on behalf of a principal depends on *words or conduct* by the principal either to the agent (actual authority) or to a third-party (apparent authority). *See Reliant Energy Servs., Inc. v. Cotton Valley Compression LLC*, 336 S.W.3d 764, 783 (Tex. 2011). That principle precludes subjective intent as indicating authority. Even apparent authority requires "justifiable reliance on the principal's words or conduct." *Id.* at 784.

The principles parallel Texas law on ratification. "A party's subjective state of mind is immaterial to a claim of implied ratification. . . . Courts instead look to objective evidence of intent, such as the party's conduct." *See BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 197 (Tex. 2021). There must be a "manifestation" of intent by "words or actions." *Id.* at 197-98.

Question 5 in the jury charge omitted these elements—and as Weeks explained, no presumed finding is proper, as no evidence would support it. Brief of Appellant 33-34 ("No legally sufficient evidence shows that Janice and Robert . . . granted Merrill Lynch authority to add those markings.")

Nor is "consent" the proper term in contract law. Rather, as the pattern jury charge suggests, agency principles relating to contract formation speak in terms of authority, not consent. *See, e.g.*, State Bar of Texas, Texas Pattern Jury Charge 101.15 (2024) (instruction on authority).

"Consent" is more appropriate to the realm of property law, e.g., theft and trespass. *See* State Bar of Texas, Texas Pattern Jury Charge 7.2 (2024) (question on civil theft containing element of consent); *id.* 11.2 (question on trespass to real property containing element of consent).

In this regard, it is instructive how the Penal Code distinguishes the concepts of "intent" and "consent" by giving them distinct meanings. *See* Tex. Penal Code § 1.07(a)(11) ("'Consent' means assent in fact, whether express or apparent."); *id.* § 6.03(a) ("A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.").

At any rate, as the opinion evidences, no authority appears to support the holding that the Question 5 finding of *subjective intent* is "in essence" a finding of *knowledge and consent* by Robert and Janice that their agent—Merrill Lynch—in the future would mark up the CRA on their behalf.

## II. THE OPINION CONSTRUES THE VERDICT IN A MANNER BEYOND THE COMMONLY UNDERSTOOD MEANING OF WORDS.

The opinion also implicates established principles for construing a jury verdict. A paradigm is the decision in *Memorial Hermann Health Systems v. Gomez*, 649 S.W.3d 415 (Tex. 2022), where the court explained:

> In determining whether a charge interpretation is reasonable, "[t]he charge must be viewed as a whole, and interpreted in the light of its entire content, of the issues between the parties, and of the evidence relevant thereto." Jury charges are given their commonsense interpretation, gleaned from both the text of the charge and the context of the case. When faced with ambiguous jury findings, a reviewing court must interpret the charge such that the findings uphold the judgment. But a court cannot ignore a charge's plain, commonsense meaning merely because an unreasonable interpretation would better align with the judgment.

*Id.* at 423–24. They key takeaway: the courts "cannot ignore a charge's plain, commonsense meaning" in order to arrive at a meaning that "would better align with the judgment." *Id.* at 423.

It's not commonsense to view Question 5 as "in essence" a question about consent. The charge instructed the jury to give terms in the jury charge *the meaning commonly used*: "When words are used in this charge in a sense that varies from the meaning commonly used, you are given a proper legal definition . . ." (CR 556). As commonly used, "intent" is not "consent."

That's apparent from how standard dictionaries define "intent" and "consent." *See, e.g.,* https://www.merriam-webster.com/dictionary/intent ("a usually clearly formulated or planned intention : aim" or "the act or fact

of intending : purpose" or "the state of mind with which an act is done"); https://www.merriam-webster.com/dictionary/consent ("compliance in or approval of what is done or proposed by another" or " agreement as to action or opinion"); *Consent*, Black's Law Dictionary (12th ed. 2024) ("voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose . . . ; legally effective assent"); *Intent*, *id.* ("The state of mind accompanying an act, esp. a forbidden act."). "Intent" and "consent" are not synonyms in a standard on-line thesaurus. *Compare, e.g.,* https://www.merriam-webster.com/thesaurus/consent *with* https://www.merriam-webster.com/thesaurus/intent (accessed 08-19-25).

Given that the charge instructed the jury to give its terms a meaning as commonly used, the opinion—in construing intent as "in essence" consent— the opinion breaks new ground in a way contrary to the Supreme Court of Texas principles on how to construe a jury verdict.

## Prayer

Jennifer Weeks ask this Court to reconsider the decision and modify the trial court judgment by reversing it and rendering a judgment for Weeks in accordance with the prayer for relief in her principal brief.

11

Respectfully submitted,

*/s/ Stacy R. Obenhaus*
Michael D. Peay
Texas Bar No. 00795582
mpeay@foley.com
Rachel K. O'Neil
Texas Bar No. 24068616
rkoneil@foley.com
Stacy R. Obenhaus
Texas Bar No. 15161570
sobenhaus@foley.com
Thomas A. Leonard
Texas Bar No. 24091707
tleonard@foley.com
Foley& Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000

**Counsel for Jennifer Weeks**

## Certificate of Compliance

I certify that, according to the word count of the computer program in use to prepare this document, this document contains **1,758** words, apart from those parts of the document Texas Rule of Appellate Procedure 9.4(i) excludes from the word count.

*/s/ Stacy R. Obenhaus*
Stacy R. Obenhaus

## Certificate of Service

I certify that this document was served August 22, 2025, by delivery to those named below by email or the electronic filing manager, including:

Counsel for David Canchola:

Isaac Shutt
Shutt Law Firm, PLLC
522 Bishop Ave.
Richardson, Texas 75081
ishutt@shuttlawfirm.com

Brian M. Andrade
Andrade Law Firm, PLLC
522 Bishop Ave.
Richardson, Texas 75081
brian@dfw-lawyer.com

Counsel for Robert W. Manley, Jr.:

Evan Horner
Stephen Le Brocq
Le Brocq & Horner, PLLC
2828 East Trinity Mills Road - Suite 221
Carrollton, Texas 75006
stephen@lebrocqhorner.com
evan@lebrocqhorner.com

*/s/ Stacy R. Obenhaus*
Stacy R. Obenhaus

# Appendix A

Memorandum Opinion

August 7, 2025



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-24-00043-CV**

**ESTATE OF JANICE KEITH MANLEY, DECEASED**

**On Appeal from the Collin County Probate**
**Collin County, Texas**
**Trial Court Cause No. PB1-0748-2020**

## MEMORANDUM OPINION

Before Justices Miskel, Kennedy, and Jackson
Opinion by Justice Kennedy

Appellants David R. Canchola and Jennifer R. Weeks, two adult children of Janice K. Manley, deceased, appeal the trial court's judgment declaring various Merrill Lynch accounts to be the sole property of appellee Robert M. Manley, the deceased's surviving spouse.

The central issue in this case is whether the accounts at issue, held in the names of Janice and Robert, are joint tenancies with the right of survivorship.[1]  If the accounts are joint tenancies with the right of survivorship, Janice's community property interest in same passed automatically to Robert upon her death.  If they are

---

[1] Because Robert Manley and his deceased wife, Janice Manley, share a last name, we will refer to them by their first names for clarity in this opinion.

not survivorship accounts, Janice's community property interest in same passed to her estate upon her death to be distributed to Janice's children as the devises and beneficiaries under her Last Will and Testament.

Canchola and Weeks raise several issues on appeal. During oral argument their respective attorneys confirmed that they are challenging the formation of the judgment and the legal sufficiency of the evidence to support the jury's answers to certain questions. Canchola also challenges the trial court's denial of his request for attorney's fees pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. Robert raises three cross-issues urging the trial court erred in denying his Third Traditional Motion for Summary Judgment, in admitting an exhibit identified as "Weeks 1",[2] and in denying his motion for a directed verdict. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Robert and Janice married in December of 1993. No children were born to their marriage but they both had children from previous marriages. Janice had three children, and Robert had two, one of whom is now deceased. Robert and his son Ross Manley owned and operated a business known as Adtel International at the time Janice and Robert married and continued to do so at the time of trial. Janice

---

[2] Weeks 1 is a copy of a Merrill Lynch Client Relationship Agreement form Weeks found among Janice's effects containing the signatures of Janice and Robert and a date of December 22, 2003, but no account numbers or account ownership designations.

had been a legal secretary, at one time working for the Texas Court of Criminal Appeals. The record does not indicate when Janice ceased being a legal secretary but does establish that, at some point, she worked at Adtel International as a secretary.

In 2001, Robert opened one or more accounts with Merrill Lynch in his name only. In 2003, the relationship between Janice and Robert became strained and Janice began to distrust Robert. It was suggested at trial that as part of a reconciliation of their marital differences, Janice and Robert agreed to add Janice to the Merrill Lynch accounts.[3]

Janice passed away suddenly and unexpectedly on September 21, 2019. She was 73 years old at the time and Robert was 77 or 78. Janice's Last Will and Testament, dated April 28, 1989, devised all of her estate to her children. Following Janice's death, in connection with the administration of her estate, attempts were made to discern which property belonged to her estate and an inquiry was made into the Merrill Lynch accounts. During the probate process, Robert's attorneys presented a Client Relationship Agreement ("CRA") they obtained from Merrill Lynch indicating the accounts in question were joint tenancies with the right of survivorship.

---

[3] It appears that at one point there were three Merrill Lynch accounts and that two of them were later consolidated into one.

On May 10, 2021, Canchola filed an Original Petition for Declaratory Judgment. Initially, Canchola's petition concerned Adtel International. He sought a declaration the business was community property and, alternatively, that Adtel International was a joint venture of Janice and Robert. On January 24, 2024, Canchola supplemented his petition to address the Merrill Lynch accounts. The supplemental petition contained the following snapshot of a portion of the CRA.



Canchola acknowledged the CRA signed by Janice and Robert on December 22, 2003, included "X" marks in the box designations for JTWROS but claimed the accounts were not valid joint tenancies with right of survivorship accounts because the form did not define "JTWROS" and did not include the initials of Janice or Robert next to the checked boxes. Canchola sought a declaration the CRA did not create a right of survivorship between Janice and Robert and that Janice's community property interest in the accounts is part of her probate estate.

On March 7, 2023, Weeks joined the lawsuit and filed her Original Petition adopting Canchola's request for a declaration concerning the Merrill Lynch accounts. Weeks filed her petition prior to discovering a copy of the CRA among Janice's effects that contained the signatures of Janice and Robert and a date of December 22, 2003, but no account numbers or account ownership designations.

Robert generally denied Canchola's and Weeks's allegations and maintained the accounts are joint tenancies with the right of survivorship, and thus, Janice's interest in same vested in him upon her death.

A jury trial commenced on October 30, 2023. The witnesses at trial were Christopher Lyons, the Manleys' wealth management advisor at Merrill Lynch; Robert's son Ross; Canchola; Robert; Weeks; Linda James, a forensic document examiner; and the parties' attorneys, who testified about attorney's fees.[4] Prior to trial, Canchola dismissed all of his claims other than those concerning the Merrill Lynch accounts and the parties focused solely on the Merrill Lynch accounts at trial. Canchola and Weeks relied upon the copy of a Merrill Lynch CRA form that Weeks found among Janice's effects years after Janice's death, which contained the signatures of Janice and Robert and a date of December 22, 2003, but no account numbers or account ownership designations, to urge no survivorship agreement was ever consummated. Robert relied on the copy of the CRA that was maintained by Merrill Lynch for the Manley accounts that, in addition to including the signatures of Janice and Robert and a date of December 22, 2003, identified the account numbers and designated the accounts "JTWROS" (defined in the CRA packet as "Joint Tenants With Right of Survivorship").

---

[4] We note that Robert's attorney testified that Robert was not seeking attorney's fees in this case.

At trial, Lyons testified to the following. In establishing an account at Merrill Lynch, Merrill Lynch either sends the Merrill Lynch Client Relationship Agreement to the client to be filled out and returned or a Merrill Lynch representative meets with the client to fill out the form. A couple of weeks after Merrill Lynch sets up an account it confirms everything on the CRA form and sends the disclosures required by federal law to the client. Merrill Lynch is required by federal law to keep documents for seven years. The Client Relationship Agreement packet produced by Merrill Lynch in this case, in response to a subpoena duces tecum, containing eight pages and identified as "Manley 4",[5] was the agreement in effect when Janice and Robert signed the CRA form.[6] The second page of the agreement includes a "Key to Joint Account Designations" indicating the acronym "JTWROS" means "Joint Tenants With Right of Survivorship." In addition, the CRA packet includes three copies of the signature page, separated by carbon paper, the first designated the "Client Account Service Copy," the second designated the "Financial Advisor Copy," and the third designated the "Client Copy." Lyons indicated that the legal

---

[5] The second page of the agreement contains instructions, the third through fifth pages contain the client relationship agreement in triplicate, the sixth and seventh pages contain terms and conditions and the last page includes a global privacy pledge. The signature page includes an express agreement to the terms and conditions. The terms and conditions incorporate the Cash Management Disclosures. The Cash Management Disclosures include a section labeled "Joint Accounts and Joint and Several Liability" that explain what will happen to the money in an account in the event one of the joint account holders dies depending on how the account is designated, including that "[u]nless agreed otherwise among the account holders in writing provided to [Merrill Lynch], joint accounts designated 'with right of survivorship' (e.g., JTWROS") shall vest the interest of a deceased account holder in the surviving account holder(s)."

[6] The code on the bottom of the completed form is the same code on the bottom of the exhibit identified as "Manley 4".

ownership of an account is in the form the account holder designates on the CRA form and as reflected in the title of the account. He explained the account title includes the names of the account holders and the ownership designation of the account and that the account title would be reflected on monthly account statements, on annual tax statements, and on trade confirmations. Two monthly account statements were admitted into evidence titled "Robert W Manley and Janice K Manley JTWROS." One of the statements, covering the time period from August 31, 2019, through September 30, 2019, was addressed to the Manleys at their home address, and one of the statements, covering the time period from December 1, 2019, through December 20, 2019, was addressed to a post office box Robert used for Adtel International. Lyons also indicated that Merrill Lynch employees are not allowed to check the account designation boxes without the knowledge and consent of the account holders and that it is permissible for Merrill Lynch employees to check the account designation box if the account holders indicate how they want the account to be designated. Given that twenty years had passed from the time the Manleys signed the CRA and the time of trial, it is not surprising that Lyons could not recall the details of how Janice was added to the accounts or how the CRA form was completed. He did however indicate that he had no reason to believe Merrill Lynch's policies concerning the creation of accounts were not followed when opening the accounts for the Manleys, and he recalled that he had spoken with Janice, that she had called to ask about monthly statements and year-end summaries,

that she had access to the accounts, and that Merrill Lynch received writings in the mail from her. In addition, Lyons acknowledged that every monthly statement and every tax statement from the time Janice was added to the accounts included the account title, "Robert W Manley and Janice K Manley JTWROS" and that Janice never complained about or contested the account designation. When Merrill Lynch was notified about Janice's death, it converted the account from joint to individual.

Ross Manley testified that Robert had been diagnosed with early signs of dementia. Ross had no knowledge concerning the creation of the Merrill Lynch accounts or the addition of Janice to same.

Consistent with Ross's testimony regarding Robert's dementia, Robert was confused and contradicted himself both at trial and during his deposition, portions of which were played and read to the jury. At trial, he recalled he and Janice met with Lyons and opened a joint survivor account but could not recall whether he and Janice agreed what would happen to the account when one of them passed away. During his deposition, Robert did not recall meeting with both Lyons and Janice about the Merrill Lynch accounts. He did not recall having added Janice to the accounts or sending any agreements to Lyons, and he indicated that he never spoke with Janice about the Merrill Lynch accounts. He claimed the money in the Merrill Lynch accounts should go to him as the survivor and that he wanted Janice to have all the money in the Merrill Lynch accounts if she survived him. Towards the end

of his deposition, Robert testified he thought the Merrill Lynch accounts were survivorship accounts.

Canchola testified he had no personal knowledge of the creation of the Merrill Lynch accounts or the execution of the CRA. He acknowledged Janice had a life insurance policy and that he was a beneficiary of same.

Weeks testified about her mother generally and about the relationship between Janice and Robert. She indicated that at some point both Janice and Robert filed petitions for divorce and that Janice did not trust Robert. Janice and Robert reconciled their differences in 2003. Weeks further testified that on January 7, 2023, she discovered the blank form of the Merrill Lynch CRA ("Weeks 1") in an accordion folder her mother maintained while she searched for documents pertaining to the title for the vehicle Janice owned. She also discovered some account statements from Merrill Lynch. Weeks indicated her mother kept documents she thought were important. She acknowledged that she did not know the circumstances regarding the creation of Weeks 1 and she was not present when it was signed. She admitted she had no personal knowledge concerning Weeks 1; she just found it. Weeks acknowledged that Merrill Lynch would not have altered any business records; that if the accounts were survivorship accounts and Robert pre-deceased Janice, Janice would have received all of the funds in the accounts and that would be a great reason to open a survivorship account; and that Janice wanted to provide for herself in the event Robert passed away first.

Linda James, a forensic document examiner, testified as to the authenticity of signatures and handwriting. She looked at the CRA produced by Merrill Lynch and exemplars of handwritings of Janice and Robert. She testified an unknown writer placed the "X" marks on the CRA. She acknowledged she was not providing an opinion on the order in which the writings were placed on the CRA.

Among the exhibits admitted into evidence were:

- Weeks 1, the CRA form containing only the signatures of Janice and Robert and the date of December 22, 2003, often referred to as the "blank form;"

- Manley 1 and 2,[7] the CRA form designating the accounts as JTWROS, often referred to as the "completed form," with Manley 1 being supported by a business record affidavit from Merrill Lynch;

- Manley 3, correspondence from Robert to Lyons dated December 22, 2003, stating, "Enclosed is the required signature page mentioned in your email" and requesting that the name on the accounts be changed from "Robert W Manley" to "Robert W or Janice K Manley;"

- Manley 4, the Merrill Lynch CRA packet in existence at the time Janice was added to the accounts;

- Manley 5, the Merrill Lynch Cash Management Account Financial Service booklet;

- Manley 6, additional paperwork with Merrill Lynch, including a questionnaire designed to ascertain the client's risk tolerance and investment goals, and a contract (the managed account agreement) signed by Janice and Robert and dated January 9, 2004;

- Manley 7 and 8, monthly account statements addressed to "FAO [For the Account Of] Robert W Manley and Janice K Manley JTWROS;" and

---

[7] Manley 2 is an enlargement of Manley 1.

- Manley 9 and 10, updated personal summaries for Janice and Robert dated June 2, 2017, confirming a mailing address of the post office box Robert maintained for Adtel international.[8]

After both sides rested their cases, the trial court held an informal "off the record" charge conference. When trial reconvened on the record, the trial court heard objections to the charge. The objections were fairly limited, with Canchola's and Week's objections comprising eight pages of the trial transcript. The trial court then submitted and read the charge to the jury, the parties made closing arguments,

---

[8] Robert also presented for admission into the record his proposed jury questions. They included the following:

"Do you find the Merrill Lynch accounts were held with the right of survivorship?"

"Do you find by a preponderance of the evidence that alterations were made to the contract after Janice Manley signed the contract?"

"Do you find by a preponderance of the evidence that the alterations you found in Question 1 above were made with the knowledge and consent of Janice Manley?"

"Do you find by a preponderance of the evidence that Janice Manley ratified the contract after she acquired knowledge of the alterations found by you in Question 1 above?"

No rulings on these proposed questions are contained in the record.

The record contains the following proposed questions from Weeks:

"Did Janice Manley and Robert Manley mutually agree in December 2003 that the funds in the Merrill Lynch Account would go to the surviving spouse if one spouse passed away?"

"Was the "JTWROS" box on the CRA Excerpt checked *before* Janice Manley signed the CRA Excerpt?"

"Did Merrill Lynch make the required disclosures to Janice Manley to establish a valid community property survivorship account?"

"Did Janice sign the CRA Excerpt as the result of fraud?"

In substance, the trial court submitted all of Weeks' proposed questions (as questions number 1, 3 and 7) except the question about required disclosures. No ruling on that proposed question is included in the record. *See Satterwhite v. Safeco Land Title of Tarrant*, 853 S.W.2d 202, 205 (Tex. App.—Fort Worth 1993, writ denied) (overruling objections to charge does not constitute a ruling on a requested jury charge); *see also* Tex. R. Civ. P. 276.

and the jury retired to deliberate. Relevant here, are the jury's unanimous responses to question numbers 1 through 5.[9]

Specifically, the jury found Janice and Robert agreed the Merrill Lynch Accounts would belong to the surviving spouse (question number 1), Janice and Robert signed the CRA form to establish or confirm their agreement that the Merrill Lynch Accounts would belong to the surviving spouse (question number 2), the "X" markings and account numbers were not written on the CRA form at the time Janice and Robert signed the CRA form (question numbers 3 and 4), and Janice and Robert signed the CRA form intending that the "X" markings and account numbers would be later filled in to accomplish their agreement the Merrill Lynch Accounts would belong to the surviving spouse (question number 5).

The trial court rendered judgment on December 15, 2023, declaring that a community property survivorship agreement existed between Janice and Robert regarding the Merrill Lynch accounts, ordering that Robert is awarded the entirety of the Merrill Lynch accounts, and finding an award of attorney's fees to Canchola and Weeks would not be equitable.

Weeks filed a motion to disregard the jury's answers to questions numbers 1, 2, and 5, urging the jury's answers to questions numbers 3 and 4 render them

---

[9] Nine questions were submitted to the jury. Question number 6 asked whether the CRA was ever revoked (the jury answered "no"), question number 7 asked if Janice signed the CRA as a result of fraud (the jury answered "no"), and question numbers 8 and 9 addressed Canchola's and Weeks' claims for attorney's fees.

immaterial and improperly inquired about Janice's and Robert's intent in creating the accounts.[10] That motion was impliedly overruled by the trial court's rendition of judgment in favor of Robert. *See, e.g.*, *Calabrian Chems. Corp. v. Bailey-Buchanan Masonry, Inc.*, 44 S.W.3d 276, 280 (Tex. App.—Beaumont 2001, pet. denied) (motion for judgment notwithstanding the verdict was impliedly overruled by court granting motion to disregard jury findings); *see also* TEX. R. APP. P. 33.1(A)(2)(a).

Canchola filed a motion for partial judgment notwithstanding the verdict and a motion for new trial asserting the evidence is insufficient to support the jury's answers to questions numbers 1, 2, and 5 and that legal principles bar Robert from prevailing on these questions.[11] Those motions were either impliedly overruled or overruled by operation of law. This appeal followed.

## CROSS-ISSUES

In his responsive brief, Robert raises three cross-issues. As a threshold matter, we must decide whether we have the authority to address same. If a party seeks to

---

[10] Weeks stated she was incorporating any post verdict filings of Canchola.

[11] More particularly, Canchola asserted the evidence was legally insufficient to support the jury's findings to question numbers 1, 2, and 5. Additionally, he claimed the jury's answer to question number 1, finding Janice and Robert agreed the accounts would become the property of the surviving spouse, should be disregarded because the jury's answer to question number 3, regarding the lack of markings next to the letters JTWROS at the time the CRA was signed, established the contrary as a matter of law. In addition, Canchola asserted the jury's answer to question numbers 1 and 2 should be disregarded because the signatures on the CRA could not be applied to the later account ownership designations. Canchola also urged the jury's answer to question number 1 is immaterial because it concerns a verbal agreement and not a written agreement. With respect to jury question number 2, Canchola argued it is immaterial because it required the jury to speculate about Janice's and Robert's intent. With respect to question number 5, Canchola asserted the jury's answer is immaterial because a third party could not check the boxes without the signature of both spouses.

alter a trial court's judgment it must file its own notice of appeal because we may not grant the party more favorable relief than did the trial court except for just cause. TEX. R. APP. P. 25.1(c); *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004). If an appellee is satisfied with the relief granted by the trial court, but merely wants to present additional, independent grounds for affirming the trial court's judgment, no notice of appeal is required. *Dean v. Lafayette Place (Section One) Council of Co–Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The independent grounds for affirmance can be raised in a cross-issue as long as the appellee is not requesting greater relief than that awarded by the trial court. *Id.*

Robert's cross-issues are: (1) the trial court erred by denying his Third Traditional Motion for Summary Judgment; (2) the trial court erred by admitting the blank form identified as Weeks 1; and (3) the trial court erred by denying his motion for a directed verdict.

In asserting the trial court erred in admitting Weeks 1 in his second cross-issue, it appears Robert is attempting to present a potential independent ground upon which to affirm the trial court's judgment as he urges that without Weeks 1 the evidence conclusively established that the Merrill Lynch accounts were joint tenancies with right of survivorship and the trial court's judgment is unassailable. Accordingly, we will address same. *See id.*

Robert contends Weeks 1 should not have been admitted because it was not

–14–

properly authenticated. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX. R. EVID. 901(a). The predicate for admissibility under Rule 901 may be proved by circumstantial evidence. *Swan v. GR Fabrications, LLC*, No. 05-17-00827-CV, 2018 WL 1959486, at *2 (Tex. App.—Dallas Apr. 26, 2018, no pet.) (mem. op.) (citing *Sanchez v. Tex. State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 509 (Tex. App.—Austin 2007, no pet.)). A document may be authenticated by "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation." TEX. R. EVID. 901(b)(2).

Under evidence rule 104(a), when authenticity is challenged, the trial court must determine preliminary questions of admissibility. *Id.* 104(a). This determination will not be overturned absent an abuse of discretion. *Sierad v. Barnett*, 164 S.W.3d 471, 486 (Tex. App.—Dallas 2005, no pet.). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.* at 242.

As a preliminary matter, the trial court does not decide whether the evidence is genuine; the court need merely determine whether the preliminary proof is sufficient to raise an issue of fact on the genuineness of the evidence. *See*

*Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 761 (Tex. App.—Dallas 1991, writ denied). When the preliminary proof is sufficient to raise an issue of fact on the genuineness of the evidence, the court must admit it and allow the jury to determine the weight it is given. *Id.* Where a document is properly admitted over an authenticity objection, any lingering questions concerning its authenticity relate only to its weight and cannot be disturbed absent an abuse of discretion. *Id.* at 760.

Weeks testified that Weeks 1 was a true and correct copy of a document she found among Janice's personal effects a few years after her death. She recognized the signatures on the document to belong to Janice and Robert. She testified that Janice kept documents she believed were important and that the document had not been modified since she discovered it. Thus, there was at least circumstantial evidence or a fact question that the document was a form Weeks found bearing the signatures of Janice and Robert and related to the Merrill Lynch accounts, as Weeks claimed it to be. *See, e.g.*, *In re Commitment of Bailey*, No. 03-17-00312-CV, 2018 WL 4140850, at *3 (Tex. App.—Austin Aug. 30, 2018, no pet.) (mem. op.) (circumstantial evidence or fact question that the document was Bailey's voluntary statement when attested to by witness); *see also Brown v. State*, Nos. 05-14-00807-CR & 05-14-00808-CR, 2015 WL 3456652, at *3 (Tex. App.—Dallas June 1, 2015, no pet.) (mem. op., not designated for publication) (noting that defendant offered no evidence of tampering or fraud concerning document and mere possibility that someone other than defendant could have written it did not preclude trial court from

finding that reasonable juror could determine document was what State claimed it to be).[12] The trial court did not abuse its discretion in admitting Weeks 1 and allowing the jury to determine the weight it would be given. *See Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 761 (Tex. App.—Dallas 1991, writ denied). We overrule Robert's second cross-issue.

While Robert's first and third cross-issues, challenging the trial court's denials of his motion for summary judgment and motion for directed verdict, do not technically seek to alter the ultimate outcome of the case, they do seek different forms of judgment. Robert does not cite, and we have not found, any authority directly addressing complaints about denial of a motion for summary judgment or a motion for a directed verdict in the absence of a notice of appeal. Assuming, without deciding, Robert was not required to file a notice of appeal with respect to his first and third cross-issues, for the reasons set forth below, we cannot address his first cross-issue and we cannot sustain his third cross-issue.

With respect to Robert's contention in his first cross-issue that the trial court erred by denying his motion for summary judgment, the denial of a motion for summary judgment may not be reviewed on appeal after a trial on the merits. *Reese v. Duncan,* 80 S.W.3d 650, 665 (Tex. App.—Dallas 2002, pet. denied). Thus, we cannot address Robert's first cross-issue.

---

[12] Robert's counsel suggested that Weeks 1 could have been photo shopped but did not produce evidence it had been.

Robert moved for a directed verdict urging Canchola and Weeks could not contest the completed CRA was executed with Janice's authority because they did not file a verified denial and Weeks 1 was inadmissible. Texas Rule of Civil Procedure 93(7) provides a pleading setting up the "[d]enial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed" shall be verified by affidavit. TEX. R. CIV. P. 93(7). "Where such instrument in writing is charged to have been executed by a person then deceased, the affidavit shall be sufficient if it states that the affiant has reason to believe and does believe that such instrument was not executed by the decedent or by his authority. In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved." *Id.* Robert did not file a counterclaim in this case. Accordingly, no pleading upon which a duty to file a verified denial under rule 93 exists. Moreover, and notwithstanding the fact that Robert filed a general denial, had he pleaded a defense, such defense would be regarded as denied unless expressly admitted. TEX. R. EVID. 82. Because the trial court did not abuse its discretion in admitting Weeks 1 and Canchola and Weeks were not required to file a sworn pleading denying Janice signed the completed CRA form produced by Merrill Lynch, a fact issue existed concerning whether the accounts at issue were joint tenancies with right of survivorship, and thus, the trial court did not err in denying Robert's motion. *See, e.g., Sherman v. Merit Office*

*Portfolio, Ltd.*, 106 S.W.3d 135, 139 (Tex. App.—Dallas 2003, pet. denied) (directed verdict proper when evidence offered is insufficient to raise fact issue). Accordingly, we overrule Robert's third cross-issue.

HISTORY OF COMMUNITY PROPERTY SURVIVORSHIP AGREEMENTS

Attempts to effect rights of survivorship in community property between spouses were held unconstitutional until 1987, when the Legislature passed, and the Texas voters approved, a constitutional amendment authorizing rights of survivorship in community property. Tex. S.J. Res. 35, 70th Leg., R.S., 1987 Tex. Gen. Laws 4114, 4114–15. The amendment provided that "spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." TEX. CONST. art. XVI, § 15. Two years later, the Legislature passed Sections 451 and 452 of the Texas Probate Code, recodified as Sections 112.051 and 112.052 of the Texas Estates Code, authorizing the creation of community property survivorship agreements between spouses and describing the requirements for creating same.

Section 451, titled "RIGHT OF SURVIVORSHIP," provided, "At any time, spouses may agree between themselves that all or part of their community property, then existing or to be acquired, becomes the property of the surviving spouse on the death of a spouse." TEX. PROB. CODE § 451 (repealed and recodified January 1, 2014). Section 452, titled "FORMALITIES," provided:

A community property survivorship agreement must be in writing and signed

–19–

by both spouses. A written agreement signed by both spouses is sufficient to create a right of survivorship in the community property described in the agreement if the agreement includes any of the following phrases:

(1) "with right of survivorship";

(2) "will become the property of the survivor";

(3) "will vest in and belong to the surviving spouse"; or

(4) "shall pass to the surviving spouse."

An agreement that otherwise meets the requirements of this part, however, shall be effective without including any of those phrases.

TEX. PROB. CODE § 452 (repealed and recodified January 1, 2014). On May 23, 2011, the Legislature amended Section 452 adding, "A survivorship agreement may not be inferred from the mere fact that an account is a joint account or that an account is designated as JT TEN, Joint Tenancy, or joint, or with other similar language." PROB. § 452. In 2014, the Texas Probate Code was repealed and recodified as the Texas Estates Code. Sections 451 and 452 of the Probate Code were recodified as Sections 112.051 and 112.052 of the Texas Estates Code without any substantive changes. *See* TEX. EST. CODE §§ 112.051, 112.052.

With the constitutional amendment and related legislation, the Texas Legislature hoped to finally resolve the battle over survivorship rights in community property. *Holmes v. Beatty*, 290 S.W.3d 852, 856 (Tex. 2009). The proponents urged that these sorts of agreements were common in other states and simplified the transfer of certain assets to surviving spouses. *See* Gerry W. Beyer, 10 TEX.

–20–

PRACTICE SERIES: TEXAS LAW OF WILLS § 60.1 (3d ed. 2002). As Professor Beyer noted, a community property survivorship agreement "is a simple, convenient and inexpensive method for many married people to achieve an at-death distribution of their community property that is in accord with their intent." *Id.* § 60.9.

We note that the requirements for the creation of a survivorship agreement among spouses is less restrictive than the requirements applicable to non-spouses, presumably because agreements between spouses are less vulnerable to fraud. *Holmes*, 290 S.W.3d at 858. A right of survivorship provision in an account agreement can constitute an agreement between a husband and wife to create a right of survivorship in community property, and they are not required to execute separate survivorship agreements between them. *Holmes v. Beatty*, 233 S.W.3d 494 (Tex. App.—Houston [14th Dist.] 2007), *aff'd in part, rev'd in part*, 290 S.W.3d 852 (Tex. 2009).

## WEEKS'S AND CANCHOLA'S ISSUES

While Weeks's and Canchola's briefs on appeal include several legal arguments about the creation of community property survivorship agreements, they are often not clearly tied to an assertion of reversible error. *See* TEX. R. APP. P. 44.1(a).[13] During oral argument, counsel for Weeks confirmed Weeks' issues on appeal concern judgment formation and the legal sufficiency of the evidence to

---

[13] In her brief, Weeks adopted "the points of error in the Issues Presented" in the brief of Canchola. While we may sometimes refer to an argument as being made by Canchola because it is set forth in his brief, we recognize that Weeks has adopted same.

support the jury's answer to question number 5.[14] Canchola identified six issues in his brief. At oral argument, counsel for Canchola confirmed that Canchola's first five issues are arguments that there is no evidence Janice and Robert entered into an agreement that satisfies the Estates Code requirements for community property survivorship agreements[15] and the jury's findings support judgment in his favor. Canchola's final issue addresses the trial court's denial of his request for attorney's fees pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. With these clarifications, we have attempted to discern the legal arguments that are associated with the issues raised.

---

[14] More particularly, Weeks contends that Robert had the burden of obtaining findings a survivorship agreement existed, including "yes" answers to question numbers 3 and 4, and that the jury's findings the account numbers and designations were not on the agreement at the time Janice and Robert signed same require that judgment be rendered in her favor. She further contends that, if this Court determines jury question number 5 is not immaterial, that the evidence is legally insufficient to support the jury's answer to that question.

[15] Canchola's first five issues are postured as questions. Specifically,

(1) is a community survivorship agreement valid when a third party checks the JTWROS box?

(2) after a client relationship agreement with a financial institution is signed, can a community property survivorship agreement spring into existence if (a) the CRA is materially altered at a later date, (b) if an "X" is placed on that same piece of paper in a box labeled JTWROS, and (c) the box was checked by a third party?

(3) can a survivorship agreement be inferred with an "X" in a box beside the letters JTWROS on a CRA;

(4) was it error to admit the completed form of the CRA? and

(5) is there sufficient evidence to support the jury's answers to question numbers 1, 2 and 5?

While issue 5 states a sufficiency of the evidence issue, in his brief Canchola states "Issue 5 presents charge error." To the extent Canchola now contends issue 5 presents charge error, he waived that complaint by not objecting to the submission of jury question numbers 1, 2, and 5 and by affirmatively noting at the charge conference question number 5 was "agreeable accurate and appropriate." *See* TEX. R. CIV. P. 274; *In re A.V.,* 113 S.W.3d 255, Tex. 2003) ("[o]ur law on preservation of error does not permit . . . review of unpreserved" charge error, which is waived where appellant fails to object in the trial court).

## I.       Jury Verdict

Canchola and Weeks assert the trial court improperly rendered judgment in favor of Robert because the jury's answers to question numbers 3 and 4 establish the statutory requirements for the creation of a community property survivorship agreement were not satisfied.  They further urge that the jury's answers to question numbers 1, 2, and 5 should have been disregarded in light of the jury's answers to questions numbers 3 and 4 and because question numbers 1, 2, and 5 improperly inquired as to the parties' intent separate and apart from the written agreement itself.

### A. Preservation of Claimed Error

We first address whether Canchola and Weeks preserved their argument the jury's answers to question numbers 1, 2, and 5 should have been disregarded as immaterial.  Canchola and Weeks did not object to those questions before the trial court submitted the charge to the jury.  Even so, a complaint that a jury's answer to a submitted question is immaterial is not a jury charge complaint.  *Musallam v. Ali*, 560 S.W.3d 636, 640 (Tex. 2018).  Thus, a party need not object to a jury question to later argue it is immaterial.  *Id.*  An immateriality issue may be raised in a post-verdict motion for judgment notwithstanding the verdict or a motion to disregard the jury's answer.  *Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex. 1988).  Accordingly, if Canchola and Weeks presented their materiality complaints about the jury's answers to question numbers 1, 2, and 5 in post-verdict motions, they are preserved on appeal.  Having reviewed their post-verdict motions,

–23–

we conclude Canchola and Weeks sufficiently raised the issue of whether the jury's answers to question numbers 3 and 4 rendered the jury's answers to question numbers 1, 2, and 5 immaterial and whether jury question numbers 1, 2, and 5 improperly inquired about Janice's and Robert's intent in creating the accounts, and thus, the issue is preserved for our review.

## B. Applicable Law and Standard of Review – Disregarding Jury Findings

A trial court's judgment shall conform to the pleadings, the nature of the case proved and the verdict, meaning that a trial court should enter its judgment in accord with the jury's findings. TEX. R. CIV. P. 301. An exception exists when a jury finding is made in response to a question that is "immaterial": a trial court may disregard a jury finding on an immaterial question when rendering judgment. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994).

A jury question is immaterial when it should not have been submitted,[16] when it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings. *Id.*

---

[16] A question should not be submitted to the jury when the question is "legally defective" or when the question submits a theory that otherwise fails as a matter of law. *See Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 394–396 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (en banc) (holding that jury question was "legally defective" because it submitted improper measure of damages); *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 93 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that jury question on malicious-prosecution claim should not have been submitted because claim "was foreclosed as a matter of law"); *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 27–28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding that jury question on breach of contract should not have been submitted because alleged contract failed for lack of consideration).

When a trial court's entry of judgment is challenged for having improperly disregarded or having improperly failed to disregard immaterial jury questions because of a legal issue (as opposed to a factual one), we review the trial court's ruling de novo. *See Markovsky v. Kirby Tower, LP*, No. 01-10-00738-CV, 2011 WL 5429014, at *2 (Tex. App.—Houston [1st Dist.] Nov. 10, 2011, pet. denied) (mem. op.); *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 27–28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

## C. Canchola's and Weeks's Assertions Concerning the Jury's Findings and Formation of Judgment

Canchola and Weeks contend jury question numbers 1, 2, and 5 were presented to the jury in error because the Estates Code requires a community property survivorship agreement to be in writing and jury question numbers 1, 2, and 5 improperly asked the jury to determine the parties' intentions beyond the unambiguous written agreement as determined by the jury's answers to question numbers 3 and 4. Thus, it appears Canchola and Weeks contend jury question numbers 1, 2, and 5 should not have been submitted and the jury's answers to question numbers 3 and 4 rendered its answers to question numbers 1, 2, and 5 immaterial.

### 1. Jury Question Numbers 1, 2, and 5 and Issue of Intent

Collectively, jury question numbers 1, 2, and 5 inquired as to whether Janice and Robert agreed the Merrill Lynch accounts would be community property

–25–

survivorship accounts, whether they signed the CRA in connection with that agreement, and whether they relied upon and consented to Merrill Lynch making the necessary markings so that their agreement would conform to the requirements of the Estates Code.[17]  Canchola and Weeks contend these questions impermissibly allowed the jury to consider extrinsic evidence of intent in reaching its verdict.

We recognize that when an agreement is clear and unambiguous regarding the parties' intent to create a joint account with the right of survivorship no extrinsic evidence to the contrary is admissible. *Stauffer v. Henderson*, 801 S.W.2d 858, 865 (Tex. 1990); *In re Estate of Dellinger*, 224 S.W.3d 434, 438 (Tex. App.—Dallas 2007, no pet.).   In fact, evidence of intent, regardless of whether it favors or

---

[17] The jury charge included an instruction concerning an agreement for right of survivorship in community property.  That instruction was as follows:

> Our law provides that at any time during a marriage, spouses may agree between themselves that all or part of their community property becomes the property of the surviving spouse on the death of the first spouse.

> A community property survivorship agreement must be in writing and signed by both spouses. It is not required that the spouses' signatures be witnessed or notarized.

> A written agreement signed by both spouses is sufficient to create a right of survivorship if the agreement includes the phrase "with right of survivorship".

> "X's" or "check marks" in a space next to words or letters abbreviating a phrase can be sufficient to create a right of survivorship in the community property described in the agreement.

> A community property survivorship agreement may be revoked by either or both spouses as provided by the terms of the agreement.

> If the community property survivorship agreement does not provide a method of revocation, then the community property survivorship agreement may be revoked by a written instrument signed by both spouses, or signed by one spouse and delivered to the other spouse.

disfavors the creation of a right of survivorship, will not be considered. *Stauffer,* 801 S.W.2d at 863–64.

Robert presented the CRA form he obtained from Merrill Lynch along with the CRA packet in effect at the time he and Janice signed the CRA and the Merrill Lynch Cash Management Account Financial Service booklet containing various disclosures. The CRA form identified the Merrill Lynch accounts, designated them JTWROS, defined in the CRA packet as "Joint Tenants With Right of Survivorship," and contained his and Janice's signatures. The CRA packet incorporated the Cash Management Disclosures, including the disclosure that "[u]nless agreed otherwise among the account holders in writing provided to [Merrill Lynch], joint accounts designated 'with right of survivorship' (e.g., JTWROS) shall vest the interest of a deceased account holder in the surviving account holder(s)." *See* PROB. § 439A(c) (The language creating the right to survivorship may be included in another account agreement or disclosure). Those documents documented an intent to create joint accounts with the right of survivorship. *See, e.g.*, *In re Estate of Lovell*, No. 05-18-00690-CV, 2019 WL 3423280, at *2 (Tex. App.—Dallas July 30, 2019, no pet.) (mem. op.) (document signed by husband and wife expressing intent that on the death of one of them, the other would have absolutely and in fee simple all property which either or both owned or had any interest in at the death of the one who dies first met the statutory requirements of a community property survivorship agreement); *see also In re Estate of Wilson*, 213 S.W.3d 491, 495 (Tex. App.—Tyler

–27–

2006, pet. denied) (intent to establish community property survivorship agreement established where signature card contained an "X" next to the statement "Joint with Right of Survivorship" and deposit agreement stated the "[r]ight of survivorship means that when a co-owner dies, the balance in the account belongs to the surviving co-owner(s) . . ."). Canchola and Weeks contested the legitimacy of that agreement with Weeks 1. The unique and unusual posture in which this case unfolded and was tried created a fact issue with respect to whether the CRA form Merrill Lynch maintained for the Manley accounts was the agreement of Janice and Robert. Questions numbers 1, 2, and 5 were submitted without objection from Canchola and Weeks to resolve that issue.

Here, the intent is clear from the CRA form Merrill Lynch maintained for the Manley accounts that the accounts were to be survivorship accounts. The only remaining question was whether it was the agreement of Janice and Robert or whether the markings were made without Janice's and Robert's consent. Whether it was their agreement did not impermissibly inquire regarding their intent. *See, e.g.*, *In re Estate of Dillard*, 98 S.W.3d 386, 397 n.5 (Tex. App.—Amarillo 2003, pet. denied) ("Incidentally, by offering the testimony of the broker, Dillard was not tendering extrinsic evidence to evince an intent on behalf of the account owners to create rights of survivorship. Rather, he was simply illustrating what agreement applied to what account."). The operative issue became did Janice and Robert authorize and consent to the markings being added to the agreement. While question

–28–

number 5 includes a reference to "intent," the question in essence addressed the issue of consent. The jury, as the fact finder in this case, resolved that issue in favor of Robert.

Even assuming *Stauffer*'s prohibition against extrinsic evidence of intent was implicated here, we would resolve that issue against Canchola and Weeks and disregard Weeks 1 because, as Canchola, Weeks, and Lyons acknowledged, Weeks 1 would have no effect, so the only agreement that could be considered would be the completed CRA form. *See* 801 S.W.2d at 865.

Accordingly, we conclude Canchola's and Weeks's assertion questions numbers 1, 2, and 5 should be disregarded as improper inquiries into intent lacks merit. We overrule Canchola's and Weeks's issues asserting these questions were improper.

## 2. Jury Question Numbers 3 and 4 - Order of Signing

Canchola and Weeks assert because the jury found the account numbers and designations were not on the CRA form when Janice and Robert signed it, those findings control and render immaterial the jury's findings on questions numbers 1, 2, and 5. Canchola and Weeks take the position that the requirements for entering into a community property survivorship agreement are very rigid and stringent and require a specific order in which the writings on the agreement are to be placed, with the parties' signatures occurring last. They cite no cases, nor have we found any, directly on point with respect to community property survivorship agreements.

While the operative statute, Section 452 of the Probate Code, now Section 112.052 of the Estates Code, requires a community property survivorship agreement be in writing and signed by both spouses and will be sufficient to create a right of survivorship in the community property described if it includes "with right of survivorship," it does not provide for the strict interpretation Canchola and Weeks expound and we will not read additional requirements into the statute. *See* PROB. § 452 (repealed and recodified January 1, 2014); EST. § 112.052; *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (we presume Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 629 (Tex. 2008) (courts may not read into statutes words which are not there); *In re J.A.H.*, No. 05-14-01330-CV, 2016 WL 3536676, at *5 (Tex. App.—Dallas June 27, 2016, no pet.) (mem. op.) (we many not add requirements the legislature did not see fit to adopt).

Canchola's and Weeks's interpretation of the statute authorizing community property survivorship agreements would render a married couple's survivorship agreement ineffective if they sign an account agreement and then a minute later they check the joint tenancy with right of survivorship box and add the pertinent account numbers. This simply cannot be what the legislature envisioned when it enacted Section 452 of the Probate Code, now Section 112.052 of the Estate Code. *See* TEX.

GOV'T CODE § 311.021(3) (we presume Legislature intended a just and reasonable result by enacting statute).

We find our sister court's decision in *Pressler* to be instructive here and the cases Weeks relies on are distinguishable.[18]  *See Pressler v. Lytle State Bank*, 982 S.W.2d 561 (Tex. App.—San Antonio 1998, no pet.).  In that case, the trial court submitted a jury question asking if a handwritten "X" placed in the box labeled "Joint – With Survivorship" was done with the consent of Weaver, the decedent.  *Id.* at 564.  During trial, a bank employee testified Pressler came to the bank alone one

---

[18] Weeks cites a decision from a sister court of appeals in which a third party attempted to add themselves as a party to a survivorship account 6 years after its creation and without the approval of the original owners.  *Rogers v. Shelton*, 832 S.W.2d 709, 711 (Tex. App.—Eastland 1992, writ denied).  Citing *Rogers*, Weeks contends that a *written* order or request is required to change the form of account.  But *Rogers* cites to Section 440 of the Probate Code, which contains the procedure for changing a properly established joint account with right of survivorship.  *Id.*; *see also* PROB. § 404 (repealed on January 1, 2014) ("The provisions of Section 439 of this code as to rights of survivorship are determined by the form of the account at the death of a party.  Notwithstanding any other provision of law, this form maybe altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account.  The order or request must be signed by a party, received by a financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.").  *Rogers* is thus distinguishable from the current case because here the parties sought to create a survivorship account, not alter one.  In fact, the written order statute providing procedure for changing properly established joint account with right of survivorship to other type of account does not apply to preclude consideration of language incorporated into terms of account by amendment when determining whether account was joint account with right of survivorship, absent showing account holders gave notification that they wished to change account from joint tenancy with right to survivorship to some other type of account.  *See Mims-Brown v. Brown*, 428 S.W.3d 366, 374 (Tex. App.—Dallas 2014, no pet.) (discussing Section 440 of the Probate Code, which was in effect at the time the Manleys added Janice to the accounts).

Weeks also cites *Estate of Graffagino*, where the decedent signed an account signature card and then a bank official completed the account designation, the court concluded the account belonged to the estate because the appellant's own testimony supported the conclusion that the bank, not the decedent, designated the nature of the account.  No. 09-00-43-CV, 2002 WL 31126901, at *2 (Tex. App.—Beaumont Sept. 26, 2002, pet. denied) (not designated for publication).  Unlike *Graffagino*, the evidence here established Merrill Lynch would not make the designation but would mark the boxes as directed by the account holders.

Weeks also relies on *Kitchens* to urge a signed signature card lacking any markings to indicate type of account is insufficient to establish JTWROS.  *Kitchen v. Sawyer*, 814 S.W.2d 798, 800 (Tex. App.—Dallas 1991, writ denied).  But in that case no markings were ever made on the card just an indication it was a joint account.

day before Weaver died to make sure she was still authorized to sign checks on the account, and the bank's cashier and vice president testified it was "possible" Pressler put the handwritten, blue ink "X" on the card. *Id.* at 565. The jury found the handwritten, blue ink "X" was not placed on the signature card by the decedent or with his consent. *Id.* at 564. On appeal, Pressler urged the trial court erred in submitting the question concerning the placement of the "X" on this signature card because it erroneously placed on her the burden of proving the "X" was placed on the signature card by Weaver or with his knowledge and consent. The court of appeals concluded Pressler, as the party claiming to own the account as the survivor, bore the burden of proving her claim and the trial court did not err in submitting the question. *Id.* at 565. We conclude *Pressler* dispels Canchola and Weeks's due order assertion and supports the proposition that a community property survivorship agreement can be effected and comply with the requirements of Chapter 112 of the Estates Code as long as the parties consent to the written agreement making the survivorship designation. Here, through the succession of several questions, the jury was asked, as the jury was in *Pressler*, to determine whether the completed form was the agreement of Janice and Robert. They resolved that question in favor of Robert. Accordingly, we resolve against Canchola and Weeks their due-order argument and contention the jury's answers to question numbers 3 and 4 rendered the jury's answers to question numbers 1, 2, and 5 immaterial. We overrule Canchola's and

Weeks's issues asserting the jury's answers to questions numbers 3 and 4 control the disposition of this case.

## II. Legal Sufficiency of the Evidence

Having concluded the trial court did not err in denying Canchola's and Weeks's request that the court disregard the jury's findings with respect to question numbers 1, 2, and 5, we now address their contention there is no credible evidence to support these findings.

### A. Standard of Review

In reviewing a no-evidence challenge, we consider the evidence "in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We are not permitted to weigh the evidence or make credibility determinations. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). The jury's finding on an issue may be upheld on circumstantial evidence as long as it may be fairly and reasonably inferred from the facts. *Blount v. Bordens Inc.*, 910 S.W.2d 931, 933 (Tex. 1995). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Cont'l Coffee*, 937 S.W.2d at 450.

It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge. *Oscar Renda Contracting, Inc. v. Bruce*, 689 S.W.3d 305, 312 (Tex. 2024);

–33–

*Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (review of sufficiency of evidence is based upon the charge submitted, even if erroneous, and party waives error if it fails to object that a jury charge question is a question of law to be answered by the trial court); *accord EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 869 (Tex. App.—Dallas 2008, no pet.).

In challenging the legal sufficiency of the evidence, Canchola asserts jury question numbers 1, 2, and 5 were presented to the jury in error and improperly requested that the jury determine "the parties' intentions beyond the parties' unambiguous written agreement" . . . determine "such intentions and 'purpose' both at the time <u>and after</u> the parties executed their written agreement" . . . and "determine the terms of a potential survivorship agreement, by implication from extrinsic circumstances." Notwithstanding the fact that we have determined the questions should not be disregarded, we note that at the charge conference, neither counsel for Canchola nor Weeks objected to the substance of question numbers 1, 2 and 5.[19]

---

[19] When the trial judge asked for objections to the jury charge, Canchola's attorney requested an explanation of community property and what happens to community property if it is not subject to a survivorship agreement. As to question numbers 1 and 2 (whether Janice and Robert agreed the Merrill Lynch accounts would become the property of the surviving spouse and whether they signed the CRA for the purpose of establishing or confirming their agreement), he requested that it be clear that the question is addressing all of the Merrill Lynch accounts. All of the Merrill Lynch accounts would become the property of the surviving spouse. He stated, "Your honor, after the discussion we have become convinced that questions 3 [whether the markings next to JTWROS were written on the CRA at the time Janice and Robert signed same], 4 (whether the account numbers were written on the CRA at the time Janice and Robert signed same), 5 [whether Janice and Robert signed the CRA intending that additional markings and/or writings would later be placed on the CRA by a Merrill Lynch representative to create accounts that would become the property of the surviving spouse], 6 [whether the CRA agreement was ever revoked], and 7 [whether Janice signed the CRA as a result of fraud] are agreeable accurate and appropriate." His remaining

–34–

Accordingly, in reviewing Canchola's and Week's sufficiency challenges, we will not address their arguments that urge the application of different legal standards and will constrain our review of the evidence in light of the charge given.[20] *See Oscar Renda Contracting*, 689 S.W.3d at 312 (we evaluate the legal sufficiency of the evidence according to the law given in the charge when no objection is raised).

## B. Analysis

In response to question number 1, the jury found Janice and Robert "agreed between themselves" that the specified Merrill Lynch accounts "would become the property of the surviving spouse on the death of the first spouse." In response to question number 2, the jury found Janice and Robert signed the one-page CRA form "for the purpose of establishing or confirming their agreement" that the Merrill Lynch accounts "would become the property of the surviving spouse on the death of

---

objections concern questions that are not at issue here. Canchola requested an oral instruction not to speculate.

Counsel for Weeks requested a definition of community property. She objected to the instruction on what is sufficient to create a survivorship agreement. She pointed out there was a typo in the instruction, that "notarization" should have been "notarized." She objected to the exclusion of an instruction about the requirements for Merrill Lynch to set up multi-party accounts. She objected to the omission of an instruction on mere existence, cannot presume disclosures were made. She objected to the definition of Merrill Lynch client relationship account in question number 2 as presumptive an agreement exists. She indicated she had no objections to question numbers 3 and 4, just a scrivener note in questions 3 and 5 JTROS should be JTWROS. With respect to question number 5, she objected to the use of the word "agreement" rather than Merrill Lynch Client Relationship Agreement. The remaining objections do not involve the jury findings at issue here.

[20] As a result of this conclusion, we need not address Canchola or Weeks arguments concerning disclosures under Chapter 113 of the Estates Code. *See* TEX. R. APP. P. 47.1. We nevertheless note that we have concluded the completed CRA form, the CRA packet and the Merrill Lynch Cash Management Account Financial Service booklet satisfy the requirements of Section 452 of the Probate Code, now Section 112.052 of the Estates Code, and Section 439(a) of the Probate Code, now Section 113.151 of the Estates Code, and thus, satisfy the statutory requirements of a community property survivorship agreement. *See* Section I.C.1. of this opinion.

the first spouse." In response to question number 5, which was conditioned upon a finding of "No" to question numbers 3 or 4 (regarding whether the "X" marks next to the letters JTWROS were written and the account numbers listed when Janice and Robert signed the CRA), the jury found Janice and Robert signed the blank CRA "intending" that additional markings be added to the signed, blank CRA form in order to create accounts that would become the property of the surviving spouse on the death of the first spouse. In short, the jury's answers to questions 1, 2, and 5 indicate it believed that at the time Janice was added to the accounts, Janice and Robert agreed that the accounts would be joint tenancies with right of survivorship and intended and understood that Merrill Lynch would make that happen. Thus, the jury impliedly found Janice and Robert consented to Merrill Lynch adding the JTWROS designations to the CRA.

The evidence includes the completed CRA form maintained and recognized by Merrill Lynch in connection with the Manley accounts. That form identifies the Merrill Lynch accounts that are subject to the agreement, designates them joint tenancies with the right of survivorship, contains the signatures of Janice and Robert, and is dated December 22, 2003.

Canchola urges the completed CRA form, Manley 1, is no evidence of a community property survivorship agreement because the original was not produced. Under rule 1003 of the Texas Rules of Evidence, a duplicate is admissible to the same extent as an original absent question as to authenticity or fairness. TEX. R.

–36–

EVID. 1003; *Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 217 (Tex. App.—Dallas 2015, no pet.). Extrinsic evidence of authenticity is not a condition precedent to the admissibility of business records accompanied by an affidavit meeting the requirements of rule 902(10) of the Texas Rules of Evidence. *See* TEX. R. EVID. 902(10). The affidavit of the duly authorized representative of Merrill Lynch attaching a copy of the CRA meets these requirements.

Canchola further urges Manley 1 was not admissible because the CRA's acknowledgement states that the signors agree to the terms of the Merrill Lynch Client Relationship Agreement on the reverse side, but there is no reverse side because the signature page had carbon copies. Thus, claims Canchola, it is an incomplete document. The reference to the reverse side did not make the document incomplete and create an admissibility issue. Rather, it appeared to reference the remainder of the document and at best it created a credibility issue. *See, e.g.*, *In re W.A.L.*, No. 09-23-00307-CV, 2025 WL 1710529, at *3 (Tex. App.—Beaumont June 19, 2025, no pet.) (mem. op.) (objection denying authenticity of signature on back of check constituted a challenge to exhibit's weight and credibility, rather than admissibility). We conclude, Manley 1 was properly admitted into evidence and the jury was entitled to consider it and to decide the weight it should be given.

Citing *Herring v. Johnson*, Canchola contends the CRA form is no evidence of a survivorship agreement because there are no initials near the survivorship designation. No. 14-03-00266-CV 2004 WL 395877, at * (Tex. App.—Houston

[14th Dist.] Mar. 4, 2004, pet. denied) (mem. op. on reh'g). *Herring* is distinguishable from the current case because the signature card at issue there read, "sign the blank(s) below if applicable" and then listed Joint with Right of Survivorship, Payable on Death ("POD") and Totten Trust account. *See id.* Thus, the signature card in that case required a signature by the designation to create a right of survivorship. *See id.* The account agreement at issue here does not contain a similar instruction and requirement, thus, we conclude *Herring* is distinguishable.

Next, Canchola asserts the CRA form is no evidence of the creation of a community property survivorship agreement because it does not define JTWROS and an impermissible inference would be required to define same. We conclude Canchola's assertion lacks merit for the following reasons. The Merrill Lynch Client Relationship Agreement packet in effect at the operative time was admitted into evidence.[21] The document code identified on the packet matched the code on the completed CRA form. JTWROS was defined on the second page of the CRA packet as "Joint Tenants With Right of Survivorship." Thus, JTWROS was defined. Furthermore, and notwithstanding the fact that the acronym "JTWROS" was

---

[21] To the extent Canchola or Weeks suggests Manley 4 is insufficient to establish the agreement in place at the operative time because it was not maintained by Merrill Lynch with the completed CRA, we note that signatures are only required on the third page, which is carboned onto pages 4 and 5. No signatures or marks are required on the other pages of the agreement. Since it is a standard form, there is no need for Merrill Lynch to maintain a full copy in each file for each account. *See Allen v. Wachtendorf*, 962 S.W.2d 279, 281–82 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (because terms and conditions of deposit agreement is standard for all signature cards, bank maintains original on computer storage media rather than an identical copy for each account).

defined, the Texas Supreme Court has concluded that Joint (WROS) means "joint tenancy with rights of survivorship." *See Holmes*, 290 S.W.3d at 960.

Weeks contends there is no evidence Janice signed the CRA for the purpose of effectuating an agreement the accounts would be joint tenancies with the right of survivorship because there is no evidence Janice received a complete copy of the Merrill Lynch client relationship agreement and saw the definition for the acronym "JTWROS". In the absence of other evidence, we presume Janice read the CRA packet and disclosures. *Allen v. Wachtendorf*, 962 S.W.2d 279, 282 (Tex. App.— Corpus Christi–Edinburg 1998, pet. denied) (citing *Eubank v. First Nat'l Bank of Bellville*, 814 S.W.2d 130, 134 (Tex. App.—Corpus Christi–Edinburg 1991, no writ)). Absent fraud, which the jury found did not occur here, one is presumed to know the contents of a document and has an obligation to protect themselves by reading documents before signing them. *Eubank*, 814 S.W.2d at 134.

Canchola further asserts no evidence supports the jury's finding of an agreement because Robert failed to present the entire client relationship agreement. This assertion is negated by the record as it includes the eight page agreement that was in effect at the time Janice and Robert signed the CRA. Weeks contends that notwithstanding the admission of Manley 4,[22] there was no complete copy of the Manley's client relationship agreement because the Manleys did not retain a copy of

---

[22] The Client Relationship Agreement packet produced by Merrill Lynch in this case, in response to a subpoena duces tecum, containing eight pages and identified as "Manley 4", was the agreement in effect when Janice and Robert signed the CRA form.

same and Robert did not present the agreement separate and apart from the document produced by Merrill Lynch. Notwithstanding the fact that the agreement was properly established and admitted into evidence through Merrill Lynch's business record affidavit and the testimony of Lyons, the fact that the Manleys did not retain a copy of the CRA packet is of no moment. *See* TEX. R. EVID. 902(10). Absent a stipulation to the contrary, each party to a contract need not retain a copy of the agreement for it to be effective. *Allen*, 962 S.W.2d at 282 (citing *Templeman v. Closs,* 212 S.W. 187, 189 (Tex. App.—Galveston 1919, no writ)). Moreover, Weeks stipulated to the admissibility of Manley 4, and Canchola has not directed us to any objection on the record to the admission of same.

In addition to the completed CRA form, the evidence indicated Janice may have been added to the Merrill Lynch accounts as part of a reconciliation of a strained relationship between her and Robert as a result of trust issues. Janice was an intelligent woman. She was younger than Robert and she passed away suddenly and unexpectedly. Weeks acknowledged that Janice wanted to provide for herself in the event Robert passed away first and acknowledged that if Robert pre-deceased Janice, Janice would have received all of the funds in the accounts and that would be a great reason for Janice to agree to open a survivorship account. In addition, Lyons testified that since Janice was added to the accounts, the accounts were titled, "Robert W. Manley and Janice K. Manley, JTWROS" establishing the accounts were set up as joint tenancies with the right of survivorship concurrently with the

–40–

addition of Janice to the accounts, and not at some other distant time as suggested by Canchola and Weeks. This is more than a scintilla of evidence from which the jury could find Janice and Robert agreed the Merrill Lynch accounts would become the property of the surviving spouse on the death of the first spouse and that they signed the CRA for the purpose of confirming their agreement.

Additionally, from the time Janice was added to the accounts forward, every monthly account statement, every year-end tax statement, and all trade confirmations included the account title "Robert W. Manley and Janice K. Manley, JTWROS".[23] Some of those statements were mailed to the Manleys' residence. Lyons also indicated he spoke with Janice about the accounts and she never requested a change in the account titles. Lyons additionally established that a couple of weeks after Merrill Lynch sets up an account it confirms everything on the CRA forms and sends the disclosures required by federal law to the client. Lyons further testified that Merrill Lynch employees were not allowed to check the account designation boxes without the knowledge and consent of the account holders but that they were permitted to do so if the account holders indicated how they wanted the account to be designated and that he had no reason to believe Merrill Lynch's policies concerning the creation of accounts were not followed in connection with the Manley accounts. From this evidence the jury could have reasonably concluded that

---

[23] *See Mims-Brown*, 428 S.W.3d at 370, 373–74 (noting that monthly statements styled, "Wayne C. Brown/Bessie R. Brown JTWROS," were sent to Bessie and Wayne as part of summary judgment evidence that "conclusively demonstrat[ed]" an account was a survivorship account).

–41–

the "X" marks and account numbers were added to the CRA with Janice's and Robert's knowledge and consent. In addition, this evidence further supports the jury's findings with respect to question numbers 1 and 2.

We conclude there is more than a scintilla of evidence to support the jury's findings Janice and Robert agreed between themselves that the accounts in question would become the property of the surviving spouse, that they signed the CRA for the purpose of establishing and confirming their agreement the accounts would become the property of the surviving spouse and that they essentially sought the assistance of Merrill Lynch to assure that the accounts were set up to fulfill their agreement. We overrule Canchola's and Week's legal sufficiency issues.

## III.    Rendition of Judgment

Having concluded the trial court did not err in refusing to disregard the jury's answers to questions numbers 1, 2, and 5, and that the evidence is legally sufficient to support the jury's answers to same, we next address whether the trial court's judgment conforms to the jury verdict. *See* TEX. R. CIV. P. 301. Our review of a trial court's entry of judgment on a jury verdict presents a pure question of law. *ALNA Prop. II, L.L.C. v. Cobb*, No. 05-22-00166-CV, 2023 WL 5740182, at *1 (Tex. App.—Dallas Sept. 1, 2023, pet. denied) (mem. op.); *Tex Star Motors, Inc. v. Regal Fin. Co., Ltd.*, 401 S.W.3d 190, 202 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that determining the legal effect of the jury's answers is a question of law). As such, we review the trial court's decision de novo. *See Nichols*

*v. Gonzales*, 127 S.W.3d 390, 394 (Tex. App.—Dallas 2004, no pet.); *see also In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) (stating in the context of entry of judgment that "questions of law are always subject to a *de novo* review")).

Here, Canchola and Weeks assert that the jury found that the required statutory formalities were not met, and thus, judgment should have been rendered in their favor, and not Robert's. They contend the jury's answers to question numbers 3 and 4 are controlling and render the jury's answers to question numbers 1, 2, and 5 as to what Janice and Robert otherwise agreed to immaterial. We have already resolved this contention against Canchola and Weeks. We note that, notwithstanding the jury's answers to question numbers 3 and 4, the jury was instructed to answer question number 5 if it answered question number 3 or 4 "No." The question then became whether the account numbers and designations were placed on the CRA form with Janice's and Robert's knowledge and consent. The jury's answer to question number 5 was in essence a finding Janice and Robert consented to Merrill Lynch completing the form in a manner that would effectuate their agreement that the accounts would inure to the benefit of the survivor of the two. *See Pressler*, 982 S.W.2d at 564–65 (jury asked to determine if writing on account signature card was done by the decedent or with his consent). It was within the province of the jury to make that determination. Accordingly, we hold the trial court properly rendered judgment for Robert. We overrule Canchola's and Weeks's issues challenging the rendition of judgment.

## IV.   Attorney's Fees

In his final issue, Canchola urges that it was inequitable and unjust for the trial court to deny his request for attorney's fees.  The Uniform Declaratory Judgments Act does not require an award of attorney's fees to anyone; rather, it entrusts attorney fee awards to the trial court's sound discretion.  *Bocquet v. Herring*, 972 S.W2d 19, 21 (Tex. 1998).  Canchola contends that he should have been awarded attorney's fees because the jury's verdict was favorable to him as to the pivotal questions and because of favorable comments the presiding judge, not the trial judge, made before trial.

Notwithstanding the fact that we have concluded the trial court properly rendered judgment in favor of Robert, we recognize that a non-prevailing party may be awarded attorney's fees under the Uniform Declaratory Judgment Act.  TEX. CIV. PRAC. & REM. CODE § 37.009.  Although a trial court may award attorney's fees to the non-prevailing party in a declaratory judgment action, the court is well within its discretion to deny an award of fees based on the outcome of the case.  *Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied).  Given the outcome of the case, we conclude the trial court did not abuse its discretion in denying Canchola's request for attorney's fees.  *See id.*  We overrule Canchola's final issue.

Weeks requests remand of issue of attorney's fees.  Her request presumed she would prevail on appeal and obtain the declaration she sought below.  Because we

have resolved her issues against her, we deny her request for remand with respect to attorney's fees.

**CONCLUSION**

We overrule Canchola's and Weeks's issues. We affirm the trial court's judgment.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

# Appendix B

Judgment

August 7, 2025



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ESTATE OF JANICE KEITH
MANLEY, DECEASED

No. 05-24-00043-CV

On Appeal from the Collin County
Probate, Collin County, Texas
Trial Court Cause No. PB1-0748-2020.
Opinion delivered by Justice
Kennedy. Justices Miskel and
Jackson participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ROBERT MANLEY, JR. recover his costs of this appeal from appellants DAVID CANCHOLA AND JENNIFER WEEKS.

Judgment entered this 7th day of August 2025.

# Appendix C

Charge of the Court

IN THE ESTATE OF              IN PROBATE COURT #1

JANICE K. MANLEY,

DECEASED                      COLLIN COUNTY, TEXAS

## JURY INSTRUCTIONS AND JURY CHARGE

### LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. You are to carefully and strictly follow the following instructions during your deliberations.

1. You are not to allow bias, prejudice, or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, what you have seen and heard in this courtroom, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Every answer that is required by the Charge is important. No juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourself with the effect of your answers.

5. You will not decide the answer to your questions by lot or by drawing straws or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. You are not to

do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.     You may render your verdict upon the vote of five or more members of the jury. The same five or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than five jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. Otherwise, only those five jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct, and it may require another trial by another jury: then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the Court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense that varies from the meaning commonly used, you are given a proper legal definition, which you are bound to accept in place of any other meaning. Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence *unless otherwise instructed.* If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."

The term "PREPONDERANCE OF THE EVIDENCE" means the greater weight and degree of credible evidence admitted in this case. Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence *unless otherwise instructed.*

A fact may be established by "DIRECT EVIDENCE" or by "CIRCUMSTANTIAL EVIDENCE" or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the word spoken. A fact is established by circumstantial evidence when it may be thoroughly and reasonably inferred from other facts proved.

## Agreement for Right of Survivorship in Community Property.

Our law provides that at any time during a marriage, spouses may agree between themselves that all or part of their community property becomes the property of the surviving spouse on the death of the first spouse.

A community property survivorship agreement must be in writing and signed by both spouses. It is not required that the spouses' signatures be witnessed or notarized.

A written agreement signed by both spouses is sufficient to create a right of survivorship if the agreement includes the phrase "with right of survivorship". "X's" or "check marks" in a space next to words or letters abbreviating a phrase can be sufficient to create a right of survivorship in the community property described in the agreement.

A community property survivorship agreement may be revoked by either or both spouses as provided by the terms of the agreement.

If the community property survivorship agreement does not provide a method of revocation, then the community property survivorship agreement may be revoked by a written instrument signed by both spouses, or signed by one spouse and delivered to the other spouse.

## QUESTION NO. 1

Do you find by a preponderance of the evidence that Janice K. Manley and Robert W. Manley, Jr., agreed between themselves that Merrill Lynch Accounts 58661U99, 58661W55, and 58661W57 would become the property of the surviving spouse on the death of the first spouse?

Answer "Yes." or "No."

ANSWER: _____ 6 = Yes _____

## QUESTION NO. 2

Do you find by a preponderance of the evidence that both Janice K. Manley and Robert W. Manley, Jr., signed the Merrill Lynch Client Relationship Agreement for the purpose of establishing or confirming their agreement that Merrill Lynch Accounts 58661U99, 58661W55, and 58661W57 would become the property of the surviving spouse on the death of the first spouse?

Answer "Yes." or "No."

ANSWER: _____ 6 = Yes _____

## QUESTION NO. 3

Do you find by a preponderance of the evidence that the "markings" (the x's) next to the letters JTWROS were written on the Merrill Lynch Client Relationship Agreement at the time this document was signed by Janice K. Manley and Robert W. Manley, Jr.?

Answer "Yes." or "No."

ANSWER: _____ 6 = No _____

558

## QUESTION NO. 4

Do you find by a preponderance of the evidence that the Merrill Lynch Account numbers 58661U99, 58661W55, and 58661W57 were written on the Merrill Lynch Client Relationship Agreement at the time this document was signed by Janice K. Manley and Robert W. Manley, Jr.?

Answer "Yes." or "No."

ANSWER: _____6 = No_____

**If you answered Question No. 3 or Question No. 4 "No", then answer Question No. 5. If you answered Question No. 3 and Question No. 4 "Yes", then do not answer question No. 5.**

## QUESTION NO. 5

Do you find by a preponderance of the evidence that **Janice K. Manley and Robert W. Manley, Jr.,** signed the Merrill Lynch Client Relationship Agreement prior to the "markings" (the x's) next to the letters JTWROS and/or the account numbers 58661U99, 58661W55, and 58661W57 being written on the Merrill Lynch Client Relationship Agreement intending that additional markings and/or writings would later be placed on the Merrill Lynch Client Relationship Agreement by a Merrill Lynch representative to create Merrill Lynch Accounts that would become the property of the surviving spouse on the death of the first spouse?

Answer "Yes," or "No."

ANSWER: _____6 = Yes_____

## QUESTION NO. 6

Do you find by a preponderance of the evidence that the Merrill Lynch Client Relationship Agreement was ever revoked by either Janice K. Manley or Robert W. Manley, Jr., at any time prior to the death of Janice K. Manley?

Answer "Yes." or "No." No

ANSWER: _____6 = Yes No_____

559

## QUESTION NO. 7

Do you find by a preponderance of the evidence that Janice K. Manley signed the Merrill Lynch Client Relationship Agreement as the result of fraud?

Fraud occurs if-

someone made a material misrepresentation, and

the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

this misrepresentation was made with the intention of inducing Janice K. Manley to sign the Merrill Lynch Client Relationship Agreement, and

Janice K. Manley relied on the misrepresentation in signing the Merrill Lynch Client Relationship Agreement, and

Janice K. Manley would not have signed the Merrill Lynch Client Relationship Agreement had the misrepresentation not been made.

"Misrepresentation" means a false statement of fact.

Spouses have a fiduciary duty to make full disclosure to one another of all material facts regarding marital property.

Answer "Yes." or "No."

ANSWER: _____No - 6_____

560

## QUESTION NO. 8

What do you find by a preponderance of the evidence to be a reasonable attorney fee for the necessary services provided to **David Canchola**, stated in dollars and cents, for each of the following:

1. For representation through trial and the completion of proceedings in the trial court.

**ANSWER in Dollars and Cents, if any: $** $72,817.47

2. For representation through appeal to the court of appeals.

**ANSWER in Dollars and Cents, if any: $** 0

3. For representation at the petition for review stage in the Supreme Court of Texas.

**ANSWER in Dollars and Cents, if any: $** 0

4. For representation at the merits briefing stage in the Supreme Court of Texas.

**ANSWER in Dollars and Cents, if any: $** 0

5. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

**ANSWER in Dollars and Cents, if any: $** 0

561

## QUESTION NO. 9

What do you find by a preponderance of the evidence to be a reasonable attorney fee for the necessary services provided to **Jennifer R. Weeks**, stated in dollars and cents, for each of the following:

1. For representation through trial and the completion of proceedings in the trial court.

**ANSWER in Dollars and Cents, if any: $** _72,817.47_

2. For representation through appeal to the court of appeals.

**ANSWER in Dollars and Cents, if any: $** _0_

3. For representation at the petition for review stage in the Supreme Court of Texas.

**ANSWER in Dollars and Cents, if any: $** _0_

4. For representation at the merits briefing stage in the Supreme Court of Texas.

**ANSWER in Dollars and Cents, if any: $** _0_

5. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

**ANSWER in Dollars and Cents, if any: $** _0_

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror —

1.    to preside during your deliberations,

2.    to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3.    to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4.    to vote on the questions,

5.    to write your answers to the questions in the spaces provided, and

6.    to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____
JUDGE PRESIDING

November 2, 2023

563

## Certificate

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

**(To be signed by the presiding juror if unanimous.)**

_Terri L. Harper_
PRESIDING JUROR

November 2, 2023

**(To be signed by those five jurors rendering the verdict if not unanimous.)**

_____
INDIVIDUAL JUROR

_____
INDIVIDUAL JUROR

_____
INDIVIDUAL JUROR

_____
INDIVIDUAL JUROR

_____
INDIVIDUAL JUROR

564

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kristin Hernandez on behalf of Stacy Obenhaus
Bar No. 15161570
kristin.hernandez@foley.com
Envelope ID: 104755075
Filing Code Description: Motion for Rehearing
Filing Description: Appellant Jennifer Weeks Motion for Rehearing
Status as of 8/22/2025 5:05 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Isaac Shutt | 24071203 | ishutt@shuttlawfirm.com | 8/22/2025 4:43:21 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 8/22/2025 4:43:21 PM | SENT |

Associated Case Party: Robert  Manley

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen Le Brocq | 24094791 | stephen@lebrocqhorner.com | 8/22/2025 4:43:21 PM | SENT |
| Evan Horner | 24104545 | Evan@lebrocqhorner.com | 8/22/2025 4:43:21 PM | SENT |

Associated Case Party: Janice Keith Manley

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jennifer Castleman | 24027796 | jcastleman@fittscastleman.com | 8/22/2025 4:43:21 PM | SENT |

Associated Case Party: David Canchola

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brian Andrade | 24078150 | brian@dfw-lawyer.com | 8/22/2025 4:43:21 PM | SENT |

Associated Case Party: JenniferRaquel Weeks

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stacy Obenhaus | | sobenhaus@foley.com | 8/22/2025 4:43:21 PM | SENT |
| Rachel Kingrey | | rkingrey@foley.com | 8/22/2025 4:43:21 PM | SENT |

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kristin Hernandez on behalf of Stacy Obenhaus
Bar No. 15161570
kristin.hernandez@foley.com
Envelope ID: 104755075
Filing Code Description: Motion for Rehearing
Filing Description: Appellant Jennifer Weeks Motion for Rehearing
Status as of 8/22/2025 5:05 PM CST

Associated Case Party: JenniferRaquel Weeks

| Rachel Kingrey | | rkingrey@foley.com | 8/22/2025 4:43:21 PM | SENT |
|---|---|---|---|---|
| Michael Peay | | mpeay@foley.com | 8/22/2025 4:43:21 PM | SENT |
| Thomas Leonard | | tleonard@foley.com | 8/22/2025 4:43:21 PM | SENT |